**THE PEOPLE OF THE STATE OF NEW YORK**, Respondent, v KOURIOCKEIN VANN, Appellant. [666 NYS2d 788] —Casey, J. Appeal from a judgment of the County Court of Schenectady County (Eidens, J.), rendered November 17, 1995, upon a verdict convicting defendant of the crimes of burglary in the second degree, criminal mischief in the fourth degree, assault in the third degree and aggravated unlicensed operation of a motor vehicle in the third degree.

Defendant was charged and ultimately convicted after a jury trial of burglary in the second degree, criminal mischief in the fourth degree, assault in the third degree and aggravated unlicensed operation of a motor vehicle in the third degree. He was thereafter sentenced as a second felony offender to a term of imprisonment of 7½ to 15 years for the burglary conviction, one year each for the assault and criminal mischief convictions, and 30 days for the motor vehicle conviction, all sentences to run concurrently. Said convictions arose out of complaints by Peggy Luck that on January 3, 1995, defendant and Reginald Mack broke into and ransacked her apartment while she hid in a neighbor's apartment. As a result of calls to the police, defendant and Mack were apprehended in their car in the vicinity of Luck's apartment. During the course of the investigation, Luck informed the police that on December 23, 1994, in defendant's presence and at his direction, Mack had punched Luck twice in the face.

Defendant's principal contention on appeal is that the People did not sufficiently establish probable cause for his warrantless arrest. In this regard Police Officer Robert Denny testified at the suppression hearing that, just prior to his 3:00 P.M. to 11:00 P.M. shift on January 3, 1995, he received information from Sergeant John Miller, the shift commander, that a 911 call had indicated that two black males had broken into an apartment in the Town of Rotterdam, Schenectady County, and that they had left the scene in a silver Audi automobile with vanity plates. At this time Denny was given pictures and names of possible suspects. Denny further testified that, soon after his shift began, he was dispatched to the same apartment as a second 911 call had been received from the complainant indicating that the two suspects had returned. While he was traveling west on Interstate Route 890 toward Luck's apartment, Denny received another radio communication indicating that the suspects had left the scene, traveling east on Route 890 in a silver Audi with vanity plates. While the dispatcher did not inform Denny of the name of the complainant, he indicated that the complainant was the source of the informa-

tion. Within two to three minutes of receiving this last radio dispatch, Denny saw a car traveling toward him matching the description provided and containing two black males. Ultimately Denny, with the help of another officer, stopped the vehicle containing defendant and Mack, and they were then arrested.

Probable cause for a warrantless arrest exists where there is information sufficient to support a reasonable belief that an offense has been committed (*see, People v Hicks*, 68 NY2d 234). While hearsay statements are sufficient to establish probable cause for such an arrest (*see, People v Johnson*, 66 NY2d 398, 402; *People v Snyder*, 200 AD2d 901, 902), such hearsay must meet the two-prong *Aguilar-Spinelli* test (*see, Spinelli v United States*, 393 US 410; *Aguilar v Texas*, 378 US 108), which requires the People to make a reasonable showing that the source of the information was reliable and that the informant had a basis of knowledge (*see, People v Hetrick*, 80 NY2d 344, 348).

Although Denny did not have firsthand knowledge, the " 'fellow officer' rule" permits him, as the arresting officer, to " 'act[ ] upon the direction of or as a result of communication with a superior or [fellow] officer * * * provided that the police as a whole were in possession of information sufficient to constitute probable cause to make the arrest' " (*People v Ramirez-Portoreal*, 88 NY2d 99, 113, quoting *People v Horowitz*, 21 NY2d 55, 60). The statements made to Denny at muster prior to his shift and by the dispatcher while en route to Luck's apartment were not the basis of suspicion or rumor. Rather, as Denny testified, the information, which was very specific, came from the victim of the crime. In addition, it was "readily inferable" from the evidence presented at the hearing that the source of the information relayed to Denny was the complainant's 911 calls (*People v Parris*, 83 NY2d 342, 349). "An identified citizen informant is presumed to be personally reliable" (*id.*, at 350; *see, People v Hetrick*, 80 NY2d 344, 349 (*supra*); *People v Nichols*, 156 AD2d 129, 130, *lv denied* 76 NY2d 740), and defendant offered no evidence to rebut this presumption.

In addition, the information Miller and the dispatcher conveyed was substantiated by Denny prior to the arrest when he observed a silver Audi with vanity plates and two occupants, matching the descriptions relayed to him, proceeding east on Route 890 within minutes of the dispatch informing him that the suspects had left the scene. Further evidence at the hearing revealed that Luck, the complainant, was personally familiar with defendant and Mack, and that she witnessed the bur-

glary and their departure in the silver Audi (*see, People v Allen*, 146 AD2d 581, 582, *lv denied* 73 NY2d 974). The evidence is also uncontroverted that the police dispatcher received the information directly from the complainant. In these circumstances, therefore, we find that both prongs of *Aguilar-Spinelli* have been satisfied.

We also reject defendant's contention that County Court erred in allowing evidence of certain uncharged crimes. Testimony by Luck pertaining to a number of prior drug purchases from defendant was relevant to the issues of defendant's motive and intent in committing the charged crimes of burglary and assault, was inextricably interwoven therewith (*see, People v Alvino*, 71 NY2d 233, 242; *People v Hubert*, 238 AD2d 745, 746-747, *lv denied* 90 NY2d 859; *People v Hernandez*, 216 AD2d 11, 12, *lv denied* 86 NY2d 795) and, finally, its probative value outweighed its potential for prejudice (*see, People v Vails*, 43 NY2d 364, 368). Moreover, County Court gave sufficient instructions to the jury, in the course of defense counsel's cross-examination of Luck and again during the final charge, with respect to how this evidence should be considered (*see, People v Rodriguez*, 224 AD2d 346, *lv denied* 88 NY2d 969; *People v Civitello*, 152 AD2d 812, 814, *lv denied* 74 NY2d 947).

We also find that testimony by Luck provided proof sufficient to establish a prima facie case that a conspiracy existed between defendant and Mack. Consequently, County Court did not err in admitting, as an exception to the hearsay rule, Luck's additional testimony concerning out-of-court statements by Mack made in the course of and in furtherance of the conspiracy (*see, People v Tran*, 80 NY2d 170, 179; *People v Sanders*, 56 NY2d 51, 62; *People v Sledge*, 223 AD2d 922, 925-926, *lv denied* 88 NY2d 854). Defendant further argues, however, that Mack's statements should have nevertheless been excluded as he was not given the opportunity to cross-examine Mack and, therefore, his constitutional right to confrontation was violated. A two-pronged approach has been advanced for determining whether such statements may still be admissible without violating the confrontation clause (*People v Sanders, supra*, at 64; *see, Ohio v Roberts*, 448 US 56, 65-66). While we find that the People have failed to satisfy this two-pronged test, in that there was no showing that Mack was unavailable to testify, reversal is not required here since there is no reasonable possibility that the erroneous admission of such testimony contributed to defendant's conviction (*see, People v Ayala*, 75 NY2d 422, 431, 432).

Finally, County Court did not abuse its discretion in refusing to strike the testimony of Raymond Jordan as no substantial risk of prejudice existed (*see, People v Chin*, 67 NY2d 22, 27-28). Significantly, defense counsel was able to fully explore Jordan's bias or intent prior to his assertion of his 5th Amendment right against self-incrimination (*see, id.*, at 29). We have reviewed defendant's remaining contentions and find them either unpreserved for our review or lacking in merit.

Mikoll, J. P., Mercure, Crew III and Yesawich Jr., JJ., concur. Ordered that the judgment is affirmed.