■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v RUBEN RENDON, Appellant. [709 NYS2d 698] —Graffeo, J. Appeal from a judgment of the County Court of Sullivan County (Ledina, J.), rendered November 30, 1998, upon a verdict convicting defendant of the crime of criminal possession of a controlled substance in the second degree.

Defendant came to the attention of the authorities during a narcotics investigation conducted by the State-wide Organized Crime Task Force (hereinafter OCTF) in the summer of 1997. OCTF was aided in its investigation by an individual (hereinafter the informant) who agreed to cooperate after his participation in drug trafficking was discovered by an undercover OCTF investigator. The informant disclosed that defendant was his supplier and agreed to undertake a drug buy under OCTF surveillance. On August 11, 1997, in the presence of the investigator, the informant telephoned a person he knew as "Ruben," later determined to be defendant, from a local motel and allegedly arranged to purchase cocaine. According to the informant, defendant agreed to deliver the cocaine within half an hour. About 30 minutes later, another member of the OCTF surveillance team observed a vehicle in the parking lot of the informant's motel and, immediately thereafter, saw defendant driving away from the motel in a vehicle registered in his

name. The informant then turned over a packet of cocaine to an OCTF investigator, indicating that the drugs had been supplied by defendant.

On August 26, 1997, the informant advised the OCTF investigator who arranged the previous drug buy that defendant had visited him unexpectedly. During their encounter, defendant allegedly stated that he was moving to Arizona and was, thus, willing to supply 4½ ounces of cocaine for $1,800. The following day, the informant telephoned defendant in the presence of the investigator in order to schedule delivery of the cocaine. The investigator recorded the exchange and listened to the informant's side of the conversation. As delivery was set for 30 minutes later, OCTF agents undertook surveillance of the motel and defendant's home and maintained radio contact concerning the planned transaction.

The record reveals that the surveillance team saw defendant leave his residence within half an hour after the telephone call and they followed him as he drove in the direction of the motel. OCTF officers stopped defendant's vehicle before arrival at the motel and placed defendant under arrest. The initial pat-down search of defendant's person revealed no contraband, but another investigator who arrived at the scene undertook a more thorough search and discovered cocaine hidden in defendant's groin area.

During pretrial proceedings, defendant moved to suppress the discovery of cocaine by asserting that the authorities lacked probable cause for his arrest and that the search of his person was unlawful. After a suppression hearing, at which two OCTF investigators described the aforementioned events, the court concluded that the arrest was supported by probable cause and ruled that the cocaine was admissible as it was discovered during a lawful search incident to an arrest.

We affirm County Court's suppression ruling. "Probable cause for a warrantless arrest may be based on hearsay information, but only upon a showing that both the basis of knowledge and veracity components of the *Aguilar/Spinelli* test have been met" (*People v Di Falco*, 80 NY2d 693, 696 [citations omitted]). In this case, the arrest was based both on information supplied by the informant and by the observations of OCTF investigators which provided circumstantial evidence of defendant's involvement in the drug transactions. The investigator's reliance on the informant was proper since that individual had firsthand knowledge of defendant's criminal conduct based on his ongoing involvement in drug transactions with defendant. Moreover, it was reasonable for the authorities to

deem the information provided to be true after their surveillance confirmed certain details of the informant's description of defendant's criminal activity, including defendant's presence at the informant's motel room when the first OCTF prearranged drug transaction took place (*see, People v Rodriguez*, 52 NY2d 483; *People v Williams*, 243 AD2d 761). Inasmuch as defendant's arrest was supported by probable cause, we find that the cocaine discovered during the search of his person incident to that arrest was clearly admissible (*see, People v Harris*, 217 AD2d 791, *lv denied* 87 NY2d 846; *People v Mena-Coss*, 210 AD2d 745, *lv denied* 86 NY2d 798).

We also reject defendant's contention that County Court erred in admitting the tape recording of the August 27, 1997 telephone conversation. The informant was unavailable to testify at trial, having died three weeks earlier. Accordingly, the People moved *in limine* for a ruling on the admissibility of the tape. Defendant argued, in opposition to the application, that without the informant the People could not establish that he was the individual with whom the informant spoke during the conversation at issue.

"Admissibility of tape-recorded conversation requires proof of the accuracy or authenticity of the tape by 'clear and convincing evidence' establishing 'that the offered evidence is genuine and that there has been no tampering with it' " (*People v Ely*, 68 NY2d 520, 527, quoting *People v McGee*, 49 NY2d 48, 59, *cert denied sub nom. Waters v New York*, 446 US 942). Among other methods, admissibility may be demonstrated by the testimony of a witness to the conversation or to its recording, or by evidence identifying the speakers and establishing the chain of custody of the recording and its unchanged condition (*id.*, at 527-528).

Here, the foundation for admission of the tape was made through the testimony of two OCTF investigators. In addition to describing the events surrounding the creation of the tape and identifying the voice of the informant, one of the investigators testified that immediately after the conversation concluded, he removed the tape from the recording device and maintained it in police custody thereafter. He additionally stated that he had listened to the tape soon after it was recorded and again the day before trial and attested that it had not been altered. The second investigator identified the other voice on the recording as that of defendant, indicating that he was familiar with defendant's voice based on a lengthy conversation he had with defendant on the day of the arrest. Thus, in addition to the testimony of the operator who recorded the conversation,

the People offered "evidence concerning the making of the tapes and identification of the speakers" and submitted proof that the tape had not been altered since its creation (*id.*, at 528). In our view, the trial court did not err in determining that a sufficient foundation was laid (*see, id.*; *People v Godley*, 130 AD2d 791, 793, *lv denied* 70 NY2d 750).

The remaining contentions of defendant have been reviewed and are found to be either unpreserved, such as his CPL 710.30 notice argument, or without merit.

Crew III, J. P., Spain, Carpinello and Mugglin, JJ., concur. Ordered that the judgment is affirmed.