(March 11, 2004)

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v FRANCES BELL, Appellant. [773 NYS2d 491]—

Cardona, P.J. Appeal from a judgment of the Supreme Court (Lamont, J.), rendered November 17, 1999 in Albany County, upon a verdict convicting defendant of two counts of the crime of assault in the second degree.

Defendant was indicted for assault in the first and second degrees and, following a jury trial, was convicted of two counts of assault in the second degree. The convictions stemmed from a physical altercation with Marilyn Oliver at her apartment at 592 Central Avenue in the City of Albany around midnight on March 4, 1999. Oliver sustained lacerations to her face caused by a sharp object. Defendant was sentenced, as a second felony offender, to concurrent prison terms of seven years to be served consecutively to a one-year sentence for a violation of probation on an unrelated matter.

On this appeal, defendant challenges Supreme Court's denial of her motion to suppress oral statements made following her arrest and trial rulings allowing the admission of a tape recording along with the testimony of two witnesses concerning the contents of the tape.

Defendant contends that her oral statements should have been suppressed because (1) they were obtained following an arrest without probable cause and (2) the police improperly entered the apartment where she was arrested without a warrant in the absence of consent or exigent circumstances. "Probable cause exists when an officer has knowledge of facts and circumstances 'sufficient to support a reasonable belief that an offense has been or is being committed' " (*People v Maldonado*, 86 NY2d 631, 635 [1995], quoting *People v Bigelow*, 66 NY2d 417, 423 [1985]; *see People v Terry*, 2 AD3d 977, 978 [2003]; *see also* CPL 140.10). Furthermore, probable cause for a warrantless arrest "may be supplied, in whole or part, through hearsay information," provided it satisfies the two-part *Aguilar-Spinelli* test requiring a showing that the informant is reliable and has a basis of knowledge for the information imparted (*People v Johnson*, 66 NY2d 398, 402 [1985]; *see People v Hetrick*, 80 NY2d 344, 348 [1992]; *People v Vann*, 245 AD2d 818, 819 [1997], *lv denied* 91 NY2d 945 [1998], *lv dismissed* 91 NY2d 978 [1998]). Additionally, under the "fellow-officer rule," an arresting officer may act upon information received from another officer " 'provided that the police as a whole were in possession of information sufficient to constitute probable cause to make the arrest' " (*People v Ramirez-Portoreal*, 88 NY2d 99, 113 [1996], quoting *People v Horowitz*, 21 NY2d 55, 60 [1967]).

Here, the evidence at the suppression hearing established that during the early morning hours of March 5, 1999, Albany

Police Detective Sean Keane was investigating the assault upon Oliver. Keane interviewed a cab driver who indicated that he had driven a female from 469 Livingston Avenue to 592 Central Avenue in Albany and then back to Livingston Avenue. During that period, he observed his fare and another female engage in a physical altercation. Keane learned from the desk officer that an anonymous caller reported that defendant was hiding in the basement of 99 Lark Street in Albany. Keane, aware that defendant was a suspect, drove to that address accompanied by Detective Ronald Matos and two uniformed officers. Keane and Matos knocked on the front door and inquired of a man and woman whether defendant was present and were told that she was not. Keane radioed the uniformed officers, located in the rear yard, and learned that they had seen a black female in a red or orange shirt exit the back door and, upon seeing them, reentered the house. Keane and Matos returned to the couple at the front door, neither of whom were wearing a red or orange shirt, and asked again if defendant was inside. They said no and also responded in the negative to Keane's question as to whether they were residents of the apartment. As Keane and Matos entered the apartment, the couple left and defendant was discovered in the bathroom. She was taken into custody and transported to the police station where she was administered *Miranda* warnings. Defendant agreed to speak to the officers and admitted that she was involved in an altercation with Oliver, but denied causing her injuries. She further stated that she went to Oliver's apartment to confront Oliver's daughter, her former roommate, about some missing property. Defendant refused to give the officers a written statement.

It was "readily inferable" from the evidence presented (*People v Parris*, 83 NY2d 342, 349 [1994]; *see People v Vann, supra* at 819) that Keane and Matos acted upon hearsay information obtained from Oliver, the victim, and relayed to them by other officers, naming defendant as her attacker. As "[a]n identified citizen informant," the victim "is presumed to be personally reliable" (*People v Parris, supra* at 350; *see People v Hetrick, supra* at 349). Additionally, the basis of Oliver's knowledge was demonstrated by her personal observations during the incident (*see People v Hetrick, supra* at 348). The occurrence of the assault was further confirmed by the cab driver. Under the circumstances herein, we find that defendant's warrantless arrest was supported by probable cause (*see People v Bingham*, 263 AD2d 611 [1999], *lv denied* 93 NY2d 1014 [1999]; *People v Washington*, 256 AD2d 639, 640 [1998], *lv denied* 93 NY2d 880 [1999]).

Next, defendant contends that the police violated *Payton v*

*New York* (445 US 573 [1980]) by their nonconsensual entry into the apartment at 99 Lark Street to effect a warrantless arrest in the absence of exigent circumstances. We note that "[t]he proscription against entry of a home is the key to *Payton*" (*People v Levan*, 62 NY2d 139, 144 [1984]). Since the evidence established that defendant did not reside at the apartment, there was no *Payton* violation. Moreover, her failure to establish a legitimate expectation of privacy in the premises precludes any challenge to her arrest based upon unlawful entry (*see People v Ponder*, 54 NY2d 160, 166 [1981]).

We turn to defendant's arguments that Supreme Court erred when it admitted an audiotape of voice mail messages left on the pager of the victim's daughter and also permitted two witnesses to testify as to the contents of the tape. Defendant contends that there was no foundation for the introduction of the audiotape of the voice mail messages. We disagree. "Admissibility of tape-recorded conversation requires proof of the accuracy or authenticity of the tape by 'clear and convincing evidence' establishing 'that the offered evidence is genuine and that there has been no tampering with it' " (*People v Ely*, 68 NY2d 520, 527 [1986], quoting *People v McGee*, 49 NY2d 48, 59 [1979], *cert denied sub nom. Waters v New York*, 446 US 942 [1980]; *see People v Rendon*, 273 AD2d 616, 618 [2000], *lv denied* 95 NY2d 968 [2000]). A tape recording may be admitted through the testimony of the person who recorded it by setting forth that the recording is a complete and accurate reproduction of the conversation and the tape has not been altered, along with testimony identifying the speaker (*see People v Ely, supra* at 527-528).

Here, Oliver's neighbor, Alexa Poli, testified that on March 5, 1999, shortly after the incident, she listened to voice mail messages associated with a pager belonging to Oliver's daughter. Poli listened to the messages a second time on her speaker phone. Subsequently, she recorded it on a cassette player by holding the microphone of the player/recorder near the speaker phone. Poli stated that she listened to the tape again at the District Attorney's office. She further related that the tape fairly and accurately represented the conversation she heard and there were no changes, deletions or alterations to the tape. Oliver's daughter, Lea Bolani, testified that she had listened to the voice mail messages, was present during their recording on the cassette player and recognized the speaker as defendant because she had lived with defendant for three months and knew her prior to that time. Bolani also testified that the tape recording accurately represented the conversation she heard on March 5,

1999 and that it had not been altered. Having established the making of the tape, the identification of the speaker and that the tape was a complete, accurate reproduction and had not been altered, we find that Supreme Court correctly determined that it was admissible (*see People v Ely, supra* at 527-528; *People v Rendon, supra* at 618-619).

Next, we agree that the testimony of Poli and Bolani stating what they heard on the tape was impermissible hearsay (*see People v Edwards*, 47 NY2d 493, 496 [1979]). However, in light of the overwhelming evidence of defendant's guilt, we find no significant probability that the jury would have acquitted her had it not been for the error and conclude that it was harmless (*see People v Crimmins*, 36 NY2d 230, 242 [1975]).

We have considered defendant's remaining arguments and find them to be lacking in merit.

Crew III, Peters, Spain and Lahtinen, JJ., concur. Ordered that the judgment is affirmed.