■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v LESTER TILLMAN, Appellant. [867 NYS2d 793]—

Lahtinen, J.

Defendant allegedly broke a window to gain access to the locked hallway of a building with apartments on Lexington Avenue in the City of Albany. He then fired shots from a .45 caliber pistol through the door of the apartment occupied by the victim, an individual he had known for over two years and with whom he had a recent disagreement. Police received a "shots fired" 911 call, which included a description of the perpetrator. Shortly thereafter, officers apprehended defendant about three blocks from the scene, and a showup identification was conducted with the victim and another witness confirming defendant as the perpetrator.

Defendant was indicted for burglary in the first degree, reckless endangerment in the first degree, criminal possession of a weapon in the second degree, and criminal possession of a weapon in the third degree. His pretrial motions resulted in a combined *Dunaway/Wade/Huntley* hearing, after which County Court (Breslin, J.) suppressed one statement that defendant gave at the scene after being arrested and before receiving *Miranda* warnings, but otherwise denied the motions. Following a jury trial, he was convicted of the four charged crimes. His CPL 330.30 motion to set aside the verdict was denied. Defendant was sentenced to concurrent prison terms (the longest of which was 17½ years for burglary) and a period of postrelease supervision. He now appeals.

We turn first to defendant's argument that the police did not have probable cause to arrest him. Probable cause exists where the police have " 'information sufficient to support a reasonable belief that an offense has been . . . committed' by the person arrested" (*People v Shulman*, 6 NY3d 1, 25 [2005], *cert denied* 547 US 1043 [2006], quoting *People v Bigelow*, 66 NY2d 417, 423 [1985]). This determination is made after considering cumulatively all the pertinent facts and circumstances (*see People v Shulman*, 6 NY3d at 26). Deference is accorded to the suppression court's assessment of witness credibility (*see People v Langenbach*, 38 AD3d 1105 [2007], *lv denied* 9 NY3d 866 [2007]; *People v Reid*, 2 AD3d 1061, 1062 [2003], *lv denied* 3

NY3d 646 [2004]). Witnesses provided a description, which was relayed to police, of a black male, wearing a dark Yankees baseball cap, a blue or gray t-shirt, carrying a small black bag on his shoulder, a possible name of "Lester," and headed from Lexington Avenue toward Clinton Avenue on foot. Defendant essentially matched the description, he was within three blocks of the incident, and one of the responding officers testified that he saw defendant glance at other advancing police and then abandon the small bag he was carrying. Defendant was detained, with police noticing blood on his hand and shirt, and the black bag, which was retrieved from about 10 feet away, contained a .45 caliber pistol. The victim and another witness, Betty Tsai, identified defendant in separate showup identifications. We are unpersuaded by defendant's assertion that we should reject County Court's credibility determinations, and we find that the record establishes that the police had sufficient information to reasonably believe that defendant was the perpetrator (*see People v Lewis*, 287 AD2d 888, 888 [2001], *lv denied* 97 NY2d 684 [2001], 97 NY2d 756 [2002]).

A further suppression issue urged by defendant involves the show-up identification of defendant by Tsai and the victim. The People have the initial burden of demonstrating that a show-up identification was reasonable under the circumstances and not unduly suggestive (*see People v Ortiz*, 90 NY2d 533, 537 [1997]; *People v Starks*, 37 AD3d 863, 865 [2007]). Tsai informed police that she had seen the perpetrator. Within a half hour of the 911 call, Tsai was transported three blocks from the crime scene to where police had apprehended defendant. She was told by police on the way not to feel obligated to identify anyone. As soon as she saw defendant, she immediately identified him without any prompting by police. This hearing evidence established that the showup identification by Tsai was reasonable and not unduly suggestive (*see People v Brown*, 46 AD3d 1128, 1129-1130 [2007]; *People v Armstrong*, 11 AD3d 721, 722 [2004], *lv denied* 4 NY3d 760 [2005]). The victim's showup identification, while also made in close geographical and temporal proximity, finds further support in the fact that he had known defendant for over two years and there was "virtually no possibility that suggestion by the police would have led the victim to misidentify defendant" (*People v Morton*, 10 AD3d 768, 769 [2004]). Nor were the circumstances such that, as urged by defendant, the People were required to produce Tsai and the victim to testify at the suppression hearing (*see People v Jiminez*, 36 AD3d 962, 965 [2007], *lv denied* 8 NY3d 947 [2007]; *see also People v Chipp*, 75 NY2d 327, 338 [1990], *cert denied* 498 US 833 [1990]; *People v Cherry*, 26 AD3d 342, 342-343 [2006]).

Next, we consider defendant's contentions that the verdict was not supported by legally sufficient evidence and was against the weight of the evidence. On a challenge for legal sufficiency, we view the evidence in the light most favorable to the People and determine "whether there is any valid line of reasoning and permissible inferences which could lead a rational person to the conclusion reached by the jury on the basis of the evidence at trial and as a matter of law satisfy the proof and burden requirements for every element of the crime charged" (*People v Bleakley*, 69 NY2d 490, 495 [1987] [citation omitted]). Here, Tsai, the building's owner, testified that the door leading to the apartments was kept locked and she saw defendant break a window of the door with his fist to gain access. The victim, who knew defendant and had not given him permission to enter the building, observed through a peephole as defendant approached, fired a shot through the apartment door and then a second shot at the door's lock. The victim was standing against the door, but was not struck when defendant fired the shots. The evidence was legally sufficient to establish the counts of burglary (*see People v Ivory*, 99 AD2d 154, 156-157 [1984]; *see also People v Torres*, 162 AD2d 385, 386 [1990], *lvs denied* 76 NY2d 895, 897 [1990]), reckless endangerment (*see People v Golden*, 37 AD3d 972, 973 [2007], *lv denied* 9 NY3d 844 [2007]; *People v Graham*, 14 AD3d 887, 888-889 [2005], *lv denied* 4 NY3d 853 [2005]), and the two counts of possession of a weapon. Since a different verdict would not have been unreasonable, we have weighed the relative probative force of the conflicting testimony and strength of the conflicting inferences, while according deference to the jury's opportunity to view the witnesses (*see People v Bleakley*, 69 NY2d at 495; *see also People v Romero*, 7 NY3d 633, 643-645 [2006]), and we are unpersuaded that the verdict is against the weight of the evidence.

Defendant argues that there was not a sufficient foundation to admit into evidence a recording of a threatening voice mail message left on the victim's cell phone by defendant less than a week before the indictment. A party offering a recorded conversation must demonstrate the recording's accuracy or authenticity by clear and convincing proof establishing that it is genuine and has not been tampered with (*see People v Ely*, 68 NY2d 520, 527 [1986]; *People v Bell*, 5 AD3d 858, 861 [2004]). The victim testified that his cell phone had voice mail capability and that, on the relevant date, he had received several voice mail messages, including one from defendant. The victim stated that he had known the victim for over two years, during which time they spoke daily and they had previously spoken over the phone. He recognized the voice mail message as that of defen-

dant. He testified that the recording of the voice mail message, which had been made by police, was exactly the same as had been left on his cell phone. The officer who made the recording also testified that the recording contained no changes, alterations or deletions of the original voice mail message. In light of this proof, Supreme Court did not err in admitting the recording into evidence (*see People v Foster*, 52 AD3d 957, 961 [2008]; *People v Pierre*, 41 AD3d 289, 291-292 [2007], *lv denied* 9 NY3d 880 [2007]; *People v Bell*, 5 AD3d at 861-862).

Nor did Supreme Court err in denying, without a hearing, defendant's CPL 330.30 motion to set aside the verdict. Defendant submitted an affidavit from a juror indicating that he felt pressure from other jurors and, although he acknowledged that he had voted to convict and affirmed that vote when the jury was polled in open court, he later had doubts about his vote, which he characterized as being made in a "moment of weakness." It was proper to deny the motion where, as here, defendant "raise[d] no question of outside influence but, rather, [sought] to impeach the verdict by delving into the tenor of the jury's deliberative processes" (*People v Karen*, 17 AD3d 865, 867 [2005], *lv denied* 5 NY3d 764 [2005]; *see People v Johnson*, 54 AD3d 636, 636-637 [2008]; *People v Williams*, 50 AD3d 472, 474 [2008], *lv denied* 10 NY3d 940 [2008]; *People v Gerecke*, 34 AD3d 1260, 1262 [2006], *lv denied* 7 NY3d 925 [2006]).

Defendant's contention that Supreme Court erred in its charge to the jury was not properly preserved and, in any event, is without merit. The remaining arguments have been considered and found unavailing.

Mercure, J.P., Peters, Malone Jr. and Kavanagh, JJ., concur. Ordered that the judgment is affirmed.