■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v CEDRIC L. WOLFE, Appellant. [962 NYS2d 403]—

Spain, J. Appeal from a judgment of the County Court of Broome County (Cawley, J.), rendered February 7, 2011, convicting defendant upon his plea of guilty of the crime of criminal possession of a controlled substance in the third degree.

Defendant was indicted on two counts of criminal possession of a controlled substance in the third degree based upon his possession of heroin with intent to sell it to a confidential informant (hereinafter CI) while under observation by the Broome County Sheriff's Department. A combined *Mapp/Huntley* hearing was held on defendant's motion to suppress, among other things, his statements to police admitting that the heroin was his and the physical evidence, including additional heroin recovered at his sister's house and a cell phone. County Court (Smith, J.) denied defendant's suppression motion. Defendant thereafter entered a negotiated guilty plea to one count of criminal possession of a controlled substance in the third degree and was sentenced, as agreed, to six years in prison with three years of postrelease supervision. Defendant now appeals,

challenging the denial of his suppression motion and the court's *Sandoval* ruling.

Initially, defendant argues that County Court (Smith, J.) erred in denying his motion to suppress the seized evidence because the police lacked a sufficient basis to approach the vehicle that he was in and did not have probable cause to arrest him. He asserts that the People failed—at the suppression hearing at which the CI did not testify but was identified—to satisfy the reliability (or credibility) prong of the *Aguilar-Spinelli* test, so as to allow police to rely on the hearsay information provided by the CI (*see People v Rodriguez*, 52 NY2d 483, 489 [1981]).

The testimony at the suppression hearing established that Detective Matthew Cower, an investigator for the Sheriff's Department, received information from the CI that she had purchased heroin numerous times from a black male known as "S." On a subsequent evening in November 2009, the CI called S from her cell phone while Cower and another investigator listened via speakerphone; she arranged to purchase six bundles of heroin for $700. Although no location was specified during the call, the CI informed Cower that her past purchases from S were typically in the Village of Endicott, Broome County, near a specific intersection in the neighborhood where the CI resided. After the set-up call, the CI waited on one street of that intersection while Cower and the other investigator set up surveillance from their vehicle parked on the other street; other officers were also present in the area. Cower observed the CI speak on her phone several times and, eventually, she called Cower to report that she had been in contact with S, who would be arriving shortly.

Soon thereafter, Cower observed a four-door vehicle turn at the intersection and stop, facing west, almost directly across the street from his east-facing vehicle. The CI approached the rear passenger door, and Cower observed the rear window descend and the CI talk to the sole rear seat passenger, a black male later identified as defendant. The CI gave Cower a prearranged signal by dropping her bag or purse, a signal that was to be given only if the CI saw the person she knew to be S in the vehicle and if S possessed, or at least indicated that he possessed, the agreed amount of heroin with him. Cower then radioed other officers to approach the vehicle, which they did, ordering all occupants to exit. As Cower approached, the rear passenger door opened and he observed a black male sitting in the rear seat with a package—wrapped in a page from a magazine—at his feet on the vehicle floor. Based upon his drug investigation experience, Cower recognized this to be a wrapped package of

heroin packets. The package was seized along with a cell phone found on the back seat of the vehicle near defendant, who was taken into custody. A field test confirmed that the package contained 60 bags of a substance that tested positive for heroin, and the cell number was determined to match the number that the CI had called earlier to arrange the purchase.

At the police station, defendant waived his *Miranda* rights and gave a signed statement to James Collins, a sergeant with the City of Binghamton Police Department, admitting that the heroin in the vehicle was his. Defendant also indicated that he had more heroin at his sister's house in Binghamton, which he agreed to retrieve; two officers accompanied him to his sister's house, where the sister, having received a phone call and instructions from defendant en route, left a backpack on her front porch. The officers retrieved the backpack, which contained 96 packets of heroin, wrapped and stamped in the same manner as those found earlier in the vehicle.

Generally, the *Aguilar-Spinelli* test is used to evaluate whether hearsay information provided to police by an informant was sufficient to provide the police with probable cause for either the issuance of a search warrant or a warrantless arrest (*see People v Porter*, 101 AD3d 44, 46 [2012]; *see also People v Parris*, 83 NY2d 342, 345-346 [1994]). The People bore the burden of establishing, at the suppression hearing, probable cause for a warrantless arrest that produced the evidence defendant sought to suppress; probable cause may be based upon hearsay information that satisfies *Aguilar-Spinelli* (*see People v Ketcham*, 93 NY2d 416, 420 [1999]).

Here, officers relied on the CI's signal and the information provided by her, as well as their own observations, as the basis for approaching the vehicle and arresting defendant. Police, thus, in part, acted upon hearsay information from the CI indicating, among other things, that defendant was in the vehicle with the heroin. Defendant contests only the proof of the CI's reliability. "The veracity [or reliability] component of the [*Aguilar-Spinelli*] test 'relates to the validity of the information and requires a showing *either* that the informant is credible and that the information supplied may, for that reason, be accepted as true *or* . . . that the specific information given is reliable' " (*People v Smalls*, 271 AD2d 754, 755 [2000], *lv denied* 95 NY2d 804 [2000], quoting *People v DiFalco*, 80 NY2d 693, 696-697 [1993]; *see People v Ketcham*, 93 NY2d at 420). Adequate indicia of reliability may include, among other things, that the CI has provided details of events that are confirmed by police observation and/or information already known to police, or by a posi-

tive identification of the defendant (*see People v Rodriguez*, 52 NY2d at 490; *People v Rolle*, 72 AD3d 1393, 1395-1396 [2010], *lv denied* 16 NY3d 745 [2011]; *People v Mantia*, 299 AD2d 664, 665-666 [2002], *lv denied* 99 NY2d 617 [2003]; *People v Smalls*, 271 AD2d at 755).

Initially, defendant did not raise this issue of the CI's reliability at the suppression hearing and, therefore, failed to preserve the argument now raised on appeal (*see People v Glover*, 23 AD3d 688, 688-689 [2005], *lv denied* 6 NY3d 776 [2006]), having only argued that the evidence did not establish probable cause to approach the vehicle and order the occupants to exit on the premise that the CI's signal was difficult to see or verify in the dark. In any event, on the record before us, we find that there was ample indicia of the CI's reliability. Specifically, the CI informed Cower that she had purchased heroin from defendant numerous times in the past at this location, officers listened as the CI called defendant to arrange the purchase and defendant agreed to sell the heroin; officers observed a vehicle show up in the area specified by the CI and the rear passenger speak with the CI, followed by the CI's signal indicating that defendant and the heroin were in the vehicle. The officers' independent verification of the details of the CI's tip, their observations and the unfolding of events exactly as predicted by the CI amply demonstrated her reliability.

The officers certainly had reasonable suspicion of criminal activity to approach the already stopped vehicle and, upon doing so, were authorized to order all occupants out of the vehicle (*see People v Robinson*, 74 NY2d 773, 775 [1989], *cert denied* 493 US 966 [1989]; *People v Muniz*, 12 AD3d 937, 938 [2004]). Moreover, the CI's set-up call and subsequent signal, along with the surrounding circumstances and police observations on a public street, supported the officers' reasonable belief that a crime was being committed in their presence, providing probable cause for defendant's arrest (*see People v Maldonado*, 86 NY2d 631, 635 [1995]; *People v Sudler*, 75 AD3d 901, 902 [2010], *lv denied* 15 NY3d 956 [2010]; *People v Tillie*, 239 AD2d 670, 671 [1997], *lv denied* 91 NY2d 881 [1997]). Thus, the evidence discovered incident to defendant's lawful arrest was admissible (*see People v Rendon*, 273 AD2d 616, 618 [2000], *lv denied* 95 NY2d 968 [2000]).

Defendant next argues that County Court should have suppressed his statement to police regarding the heroin at his sister's house, and the additional heroin evidence retrieved as a result of such statement, as involuntarily elicited due to police deception. Defendant did not preserve this argument for appeal

in that, while he raised the issue of the voluntariness of his statements in his omnibus motion, he made no argument at the suppression hearing regarding their voluntariness or police deception.[1] In any event, the claim lacks merit.

Defendant's disclosure of more heroin at his sister's house came after Collins falsely told him that police had been following the vehicle all day and knew that it had stopped somewhere else, a deception based upon information learned from the other occupants of the vehicle. Collins later agreed to speak to the District Attorney on defendant's behalf, offering no promises.[2] In general, "deception or trickery by the police 'need not result in involuntariness without some showing that the deception was so fundamentally unfair as to deny due process . . . or that a promise or threat was made that could induce a false confession'" (*People v Jackson*, 143 AD2d 471, 473 [1988], quoting *People v Tarsia*, 50 NY2d 1, 11 [1980]; *see People v Thomas*, 93 AD3d 1019, 1021-1022 [2012], *lv granted* 19 NY3d 1105 [2012]; *People v Dishaw*, 30 AD3d 689, 690-691 [2006], *lv denied* 7 NY3d 787 [2006]). Specifically, "misleading a defendant into believing that he or she had been under surveillance" (*People v Dickson*, 260 AD2d 931, 932 [1999], *lv denied* 93 NY2d 1017 [1999]; *see People v Dishaw*, 30 AD3d at 690-691; *People v Jackson*, 143 AD2d at 473) or "indicat[ing] to [a] defendant that he [or she] might help himself [or herself] by cooperating," does not rise to the level of fundamentally unfair deceptive practices that deny a defendant due process or render statements to police involuntary (*People v Spencer*, 16 AD3d at 919). Here, police deception did not render involuntary defendant's otherwise voluntary statement, which was preceded by defendant's knowing, voluntary and intelligent waiver of his *Miranda* rights, and the record fully supports County Court's finding in that regard (*see People v Culver*, 69 AD3d 976, 977 [2010]; *People v Dishaw*, 30 AD3d at 690-691; *People v Dickson*, 260 AD2d at 931-932; *People v Jackson*, 143 AD2d at 473).

Finally, defendant argues that County Court (Smith, J.) made

---

1. County Court expressly ruled that defendant had knowingly, voluntarily and intelligently waived his *Miranda* rights and, to that extent, defendant's voluntariness claim is preserved for our review (*see* CPL 470.05 [2]; *People v Prado*, 4 NY3d 725, 726 [2004]; *People v Baptiste*, 51 AD3d 184, 186 n 2 [2008], *lv denied* 10 NY3d 932 [2008]).

2. Collins' offer to tell the District Attorney that defendant had been cooperative and truthful occurred *after* defendant disclosed the additional heroin, undermining any claim that it deceptively *induced* defendant's admission. Moreover, the discussion regarding cooperation did not render any of defendant's statements involuntary (*see People v Spencer*, 16 AD3d 918, 919 [2005], *lv denied* 5 NY3d 770 [2005]).

an unfair *Sandoval* ruling, which he claims induced him to plead guilty. The People sought permission to inquire into 2005 convictions for criminal possession of a controlled substance in the third degree and attempted criminal possession of a weapon in the second degree. County Court, finding that the convictions reflect that "defendant places his own self-interest above that of society" (*see People v Williams*, 56 NY2d 236, 240 [1982]), allowed a compromise in which the People would be permitted to question defendant only as to whether he was convicted of two unspecified felonies in 2005, but would not be permitted to elicit the underlying facts. The court's ruling, which greatly limited the potential prejudicial effect of defendant's prior convictions, provided a fair balance and was not an abuse of discretion (*see People v Grady*, 40 AD3d 1368, 1370 [2007], *lv denied* 9 NY3d 923 [2007]).

Rose, J.P., Stein and McCarthy, JJ., concur. Ordered that the judgment is affirmed.