People v Pettigrew (2018 NY Slip Op 03394)





People v Pettigrew


2018 NY Slip Op 03394


Decided on May 10, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: May 10, 2018

108224

[*1]THE PEOPLE OF THE STATE OF NEW YORK, Respondent,
v
ALFONSO PETTIGREW, Appellant.

Calendar Date: March 30, 2018

Before: Clark, J.P., Mulvey, Aarons and Rumsey, JJ.


Linda B. Johnson, East Greenbush, for appellant.
Joel E. Abelove, District Attorney, Troy (Kathryn M. Moryl of counsel), for respondent.


Rumsey, J.

MEMORANDUM AND ORDER
Appeal from a judgment of the County Court of Rennselaer County (Ceresia, J.), rendered September 4, 2015, convicting defendant upon his plea of guilty of the crimes of criminal possession of a weapon in the second degree (four counts), criminal possession of a weapon in the fourth degree and criminal sale of a firearm in the third degree (three counts).
In July 2014, a confidential informant (hereinafter CI) informed police that firearms were being transported from Georgia for unlawful sale in New York by an organization controlled by "Kenneth." After the police confirmed that the address and telephone number furnished by the CI belonged to Kenneth Carson, a controlled telephone call was made between the CI and Carson during which Carson agreed to send firearms to New York by
courier for sale to the CI. In additional controlled calls made on August 1, 2014, the CI and defendant made arrangements to meet and conclude the transaction. Police established surveillance at the agreed meeting location and a person fitting the description of defendant that had been furnished by the CI arrived by taxi. Upon his arrival, defendant was removed from the taxi and arrested. Police then immediately removed defendant's backpack from the taxi and, following a warrantless search, recovered a loaded revolver, a loaded semiautomatic pistol and an additional handgun. Defendant was charged by indictment with four counts of criminal possession of a weapon in the second degree, one count of criminal possession of a weapon in the fourth degree and three counts of criminal sale of a firearm in the third degree.
Defendant was represented by a member of the Public Defender's Office (hereinafter the Public Defender). Following a hearing that was held in February 2015, County Court denied defendant's motion to suppress the firearms, finding, among other things, that the warrantless search of the backpack and seizure of the firearms were proper. In March 2015, the Public [*2]Defender informed County Court that it had a conflict of interest based on its previous representation of the CI, whom the People anticipated calling as a witness at trial. As a result, the court assigned an attorney from the Conflict Defender's Office to represent defendant. Thereafter, defendant pleaded guilty to all counts of the indictment and was sentenced, as agreed, to an aggregate prison term of six years to be followed by postrelease supervision of five years. Defendant, who did not waive his right to appeal, now appeals.
Defendant first argues that he was denied the effective assistance of counsel by the Public Defender's preexisting conflict of interest, which was not disclosed until after the suppression hearing was held, and, therefore, that his guilty plea was not knowing, voluntary and intelligent. This claim was not preserved for our review because defendant did not make a postallocution motion to withdraw his plea, and "the narrow exception to the preservation requirement is inapplicable as defendant did not make any statements during the plea colloquy that cast doubt upon his guilt" (People v Pabon, 157 AD3d 1057, 1057 [2018], lv denied ___ NY3d ___ [Mar. 30, 2018]; see People v Toledo, 144 AD3d 1332, 1333 [2016], lv denied 29 NY3d 1001 [2017]).
Defendant next challenges the denial of his suppression motion, asserting that the police did not have probable cause to arrest him and, further, that the warrantless search of his backpack was improper. Police may legally stop a vehicle and detain the vehicle's occupants "if they have reasonable suspicion that a defendant has committed, is committing or is about to commit a crime" (People v Cook, 134 AD3d 1241, 1243 [2015] [internal quotation marks, brackets and citations omitted], lv denied 26 NY3d 1143 [2016]). "A tip from a [CI] may provide the requisite level of suspicion if the People demonstrate the [CI's] reliability and the basis of his or her knowledge" (id. [internal quotation marks and citation omitted]). The reliability of a CI may be established by proof that the CI has previously provided the police with accurate information (see People v Robinson, 72 AD3d 1277, 1278 [2010], lv denied 15 NY3d 809 [2010]), by independent corroboration of the details provided by the CI (see People v Porter, 101 AD3d 44, 47-48 [2012], lvs denied 20 NY3d 1064, 1065 [2013]) or when the details provided by the CI are confirmed by police observation (see People v Cook, 134 AD3d at 1243; People v Wolfe, 103 AD3d 1031, 1033 [2013], lv denied 21 NY3d 1021 [2013]).
At the suppression hearing, Robert Bascoe, an investigator with the Drug Enforcement Agency, testified that the CI had previously provided him with accurate information that resulted in an arrest. Bascoe further testified that after the CI told him that he knew that an individual named Kenneth was transporting firearms from Georgia for sale in New York, Drug Enforcement Agency investigators were able to independently confirm that the address and telephone number that the CI furnished belonged to Kenneth Carson. Bascoe also testified that he participated in three controlled telephone calls with the CI. The first occurred on July 28, 2014, when the CI spoke to Carson and agreed to purchase firearms for cash. The second and third were made on August 1, 2014, when the CI and the person who was transporting the weapons — later confirmed to be defendant — made arrangements to meet and complete the transaction. The police thereafter established surveillance at the agreed-upon meeting location and the information furnished by the CI was further corroborated when a person fitting the physical description provided by the CI arrived at the meeting location at the agreed-upon time in a taxi, as disclosed by the CI. Thus, County Court properly determined that the police had a reasonable suspicion of criminal activity that justified them to stop the taxi.
County Court also correctly determined that the warrantless search of the backpack was proper under the automobile exception to the warrant requirement. Where, as here, "police have validly arrested an occupant of an automobile, and they have reason to believe that the car may [*3]contain evidence related to the crime for which the occupant was arrested or that a weapon may be discovered or a means of escape thwarted, they may contemporaneously search the passenger compartment, including any containers found therein" (People v Langen, 60 NY2d 170, 181 [1983] [internal quotation marks and citation omitted], cert denied 465 US 1028 [1984]). The information furnished by the CI — which the police had corroborated by independent investigation and observation — provided probable cause to believe that there were weapons in the taxi and, consequently, the warrantless search of defendant's backpack after it was retrieved from the taxi following defendant's arrest was proper (see People v Cook, 134 AD3d at 1244; People v Eure, 46 AD3d 386, 386-387 [2007], lv denied 10 NY3d 810 [2008]; see also People v Williams, 145 AD3d 1188, 1190 [2016], lv denied 29 NY3d 1002 [2017]).
Finally, we are not persuaded by defendant's argument that County Court erred in finding that certain recordings of the controlled calls are audible. "The determination of the audibility of the recording[s] was a preliminary issue to be determined by County Court in the exercise of its discretion" (People v Rostick, 244 AD2d 768, 768 [1997] [citations omitted], lv denied 91 NY2d 929 [1998]). County Court listened to the audio recordings prior to making its determination; notably, it concluded that the recording of one conversation on exhibit No. 2 was inaudible, but that the remainder of exhibit No. 2 and all of the recordings on exhibit No. 1 were sufficiently audible. Based on our own review of the recordings, we concur in that determination.
Clark, J.P., Mulvey and Aarons, JJ., concur.
ORDERED that the judgment is affirmed.