People v Davis (2022 NY Slip Op 02309)

People v Davis

2022 NY Slip Op 02309

Decided on April 7, 2022

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:April 7, 2022

109509B
[*1]The People of the State of New York, Respondent,
v
Jason Davis, Appellant.

Calendar Date:February 10, 2022

Before:Egan Jr., J.P., Clark, Aarons, Reynolds Fitzgerald and McShan, JJ.

Aaron Louridas, Delmar, for appellant, and appellantpro se.
Paul Czajka, District Attorney, Hudson (James A. Carlucci of counsel), for respondent.

McShan, J.
Appeal from a judgment of the County Court of Columbia County (Nichols, J.), rendered March 10, 2017, convicting defendant upon his plea of guilty of the crimes of, among others, criminal possession of a controlled substance in the third degree and criminal possession of a controlled substance in the fourth degree.
Defendant was charged by indictment with criminal possession of a controlled substance in the third degree based upon his possession of heroin with intent to sell it to a confidential informant (hereinafter CI) while under observation by the Columbia County Sheriff's Department. He was later charged in a separate indictment with criminal possession of a controlled substance in the fourth degree stemming from the discovery of additional narcotics upon his person during the police encounter that resulted in his arrest. Defendant moved to suppress statements that he made to police and the physical evidence obtained as the product of an illegal search and seizure. After County Court denied the motion, defendant pleaded guilty to the indictments and purported to waive his right to appeal. In accordance with the plea agreement, County Court sentenced defendant, as a second violent felony offender, to concurrent prison terms of seven years followed by three years of postrelease supervision.[FN1] Defendant appeals.
Initially, we agree with defendant that his waiver of the right to appeal was not valid. During the plea colloquy, County Court mischaracterized the appellate rights encompassed by an appeal waiver, erroneously advising defendant that, by waiving his right to appeal, he was giving up his right to appeal "anything" that had occurred in the course of the criminal action as well as the sentence to be imposed pursuant to the plea agreement. The written appeal waiver was similarly overbroad, purported to erect an absolute bar to a direct appeal and failed to indicate that certain issues survived the waiver. Accordingly, we find that defendant did not knowingly, intelligently and voluntarily waive the right to appeal (see People v Bisono, 36 NY3d 1013, 1017-1018 [2020]; People v Linear, 200 AD3d 1498, 1499 [2021]; People v Mayo, 195 AD3d 1313, 1314 [2021]; People v Bowman, 194 AD3d 1123, 1124-1125 [2021], lvs denied 37 NY3d 963, 966 [2021]; People v Figueroa, 192 AD3d 1269, 1270 [2021]). In light of the invalid appeal waiver, defendant's remaining challenges are not precluded.
Defendant's challenge to the voluntariness of his plea, while not precluded, is unpreserved for our review due to his failure to make an appropriate postallocution motion despite having had ample opportunity to do so (see People v Conceicao, 26 NY3d 375, 381-382 [2015]; People v Dickerson, 198 AD3d 1190, 1192-1193 [2021]; People v Botts, 191 AD3d 1044, 1045 [2021], lv denied 36 NY3d 1095 [2021]). Further, the narrow exception to the preservation requirement was not triggered, as defendant made no statements during the plea colloquy that cast doubt on his [*2]guilt, negated an essential element of the charged crimes or otherwise called into question the voluntariness of his plea (see People v McCoy, 198 AD3d 1021, 1022-1023 [2021], lv denied 37 NY3d 1162 [2022]; People v Daniels, 193 AD3d 1179, 1180 [2021]; People v Botts, 191 AD3d at 1445). Were we to address this issue, we would find that the record establishes that defendant entered a knowing, intelligent and voluntary plea (see People v Conceicao, 26 NY3d at 382; People v Agueda, 202 AD3d 1153, 1154-1155 [2022]). To the extent that defendant's arguments involve matters outside of the record, they are more properly the subject of a CPL article 440 motion (see People v Linear, 200 AD3d at 1499; People v Torres, 199 AD3d 1076, 1078 [2021], lv denied 37 NY3d 1165 [2022]; People v Aldous, 166 AD3d 1077, 1078-1079 [2018], lv denied 32 NY3d 1124 [2018]).
Defendant next challenges the denial of his suppression motion, asserting that the police did not have reasonable suspicion to stop his vehicle or probable cause to make an arrest. "Street encounters initiated by police are governed by the well-established graduated four-level test in which, generally stated, the level of permissible intrusion increases with the level of evidence of criminality" (People v Tillery, 60 AD3d 1203, 1204-1205 [2009] [citations omitted], lv denied 12 NY3d 860 [2009]; see People v De Bour, 40 NY2d 210, 225 [1976]). Police may legally stop a vehicle and detain its occupants "if they have reasonable suspicion that a defendant has committed, is committing or is about to commit a crime" (People v Cook, 134 AD3d 1241, 1243 [2015] [internal quotation marks, brackets and citations omitted], lv denied 26 NY3d 1143 [2016]; see People v Rodriguez, 195 AD3d 1237, 1239 [2021], lv denied 37 NY3d 1061 [2021]). To that end, information supplied by a CI "may provide reasonable suspicion . . . if the People demonstrate the informant's 'reliability and the basis of his or her knowledge'" (People v Portelli, 116 AD3d 1163, 1164 [2014], quoting People v Chisholm, 21 NY3d 990, 994 [2013]; accord People v Rodriguez, 195 AD3d at 1239; see People v Pettigrew, 161 AD3d 1306, 1307 [2018], lv denied 32 NY3d 940 [2018]). "Great weight is accorded the trial court's determination at a suppression hearing and, absent a basis in the record for finding that the court's resolution of credibility issues was clearly erroneous, its determinations are generally not disturbed" (People v Rudolph, 170 AD3d 1258, 1259 [2019] [internal quotation marks, brackets and citations omitted], lv denied 34 NY3d 937 [2019]; see People v Sanchez, 196 AD3d 1010, 1013 [2021], lv denied 37 NY3d 1029 [2021]).
The testimony at the suppression hearing established that Patrick Logue, an investigator with the Columbia County Sheriff's Department, received information from the CI that she had previously purchased heroin from a black male known to her by the name "John." While in Logue's presence, the CI contacted this individual [*3]by cell phone to arrange the purchase of a quantity of heroin. Following a series of text messages that were overseen by Logue, this individual agreed to drive to the CI's residence to sell her the heroin. In addition to the information gleaned from the text communications, Logue was also informed by the CI that the seller would be driving a red sport utility vehicle (hereinafter SUV). Later that day, while waiting in a parked vehicle near the CI's residence, Logue observed a red SUV, driven by a black male, pull into the CI's driveway. Logue then pulled his vehicle into the CI's driveway, positioning it behind the rear of the SUV, and exited his vehicle. Upon approaching the driver side door of the SUV, Logue observed defendant "reach in, underneath his backside." Logue then directed defendant to step outside of the vehicle and asked him whether he had any heroin on him. Defendant responded that he did and proceeded to reach into his front pocket and remove a bag containing a powdery substance that was later determined to be heroin. After being handcuffed, defendant claimed to be dizzy and appeared faint. This prompted Logue to radio emergency medical personnel, who responded to the scene and evaluated defendant. When defendant was informed by Logue that the police would accompany him to the hospital if he wished to go, defendant asked "how much time he was looking at" and then volunteered that he had additional heroin on his person. Logue and another officer then brought defendant to the back of the ambulance, where defendant retrieved a plastic bag containing other baggies with a brownish powdery substance, as well as a baggie containing 31 smaller baggies of crack cocaine, from inside of the back of his pants. Defendant, who no longer complained of any health concerns and declined medical treatment, was thereafter taken to the police station for questioning. After waiving his Miranda rights, defendant admitted to possessing the drugs in question and made various other incriminatory statements.
To the extent that defendant contends that the reliability of the CI was not sufficiently established at the suppression hearing, we do not agree. Although the investigator acknowledged that he had not previously worked with the CI, a history of providing accurate information is not the only way to establish reliability. Reliability may be demonstrated "where details of [the CI's] story have been confirmed by police observation" (People v Rodriguez, 52 NY2d 483, 488-489 [1981]; see People v Elwell, 50 NY2d 231, 237 [1980]; People v Lambey, 197 AD3d 728, 729 [2021], lv denied 37 NY3d 1060 [2021]; People v Vargas, 72 AD3d 1114, 1115-1116 [2010], lv denied 15 NY3d 758 [2010]). Here, the CI had purchased heroin from defendant in the past, Logue observed the text communications between the CI and defendant in which the CI arranged the purchase and defendant agreed to sell the heroin, and officers observed a black male driving a vehicle that [*4]matched the description provided by the CI show up at the address specified by the CI. The accuracy of the information that the CI conveyed to the police, the veracity of which the officers were able to confirm as they observed the events unfolding as she had described them, sufficiently demonstrated the CI's reliability (see People v Argyris, 24 NY3d 1138, 1140-1141 [2014], cert denied 577 US 1069 [2016]; People v Wolfe, 103 AD3d 1031, 1034 [2013], lv denied 21 NY3d 1021 [2013]; People v Glover, 23 AD3d 688, 688-689 [2005], lv denied 6 NY3d 776 [2006]; People v Alston, 1 AD3d 627, 628 [2003], lv denied 1 NY3d 594 [2004]; People v Mantia, 299 AD2d 664, 666 [2002], lv denied 99 NY2d 617 [2003]).
Based upon the information provided by the CI and the corroborating police observations, the officers "had reasonable suspicion of criminal activity to approach the already stopped vehicle and, upon doing so, were authorized to order [defendant] out of the vehicle" (People v Wolfe, 103 AD3d at 1034; see People v Pettigrew, 161 AD3d at 1308; People v Cook, 134 AD3d at 1243; People v Coffey, 107 AD3d 1047, 1049 [2013], lv denied 21 NY3d 1041 [2013]). Given that reasonable suspicion, Logue was permitted to ask defendant whether he had any heroin on his person (see People v Dunbar, 5 NY3d 834, 835 [2005]; People v Mueses, 137 AD3d 1664, 1665 [2016], lv denied 27 NY3d 1136 [2016]; People v Phillips, 46 AD3d 1021, 1023 [2007], lv denied 10 NY3d 815 [2008]; People v Richardson, 27 AD3d 1168, 1170 [2006]). Once defendant made the incriminating reply to Logue's inquiry and produced a bag containing the substance, there existed probable cause for his arrest (see People v Bennett, 70 NY2d 891, 893 [1987]; People v Coffey, 107 AD3d at 1050; People v Snyder, 200 AD2d 901, 903 [1994]).
We also reject defendant's assertion that the physical evidence and statements obtained from him at the scene should have been suppressed because they were the product of custodial interrogation prior to the administration of Miranda warnings. Although defendant was seized within the meaning of the Fourth Amendment during the initial period of questioning outside of his vehicle (see People v Bennett, 70 NY2d at 893-894; People v Cantor, 36 NY2d 106, 111-112 [1975]; People v Strahin, 114 AD3d 1284, 1284 [2014], lv denied 23 NY3d 968 [2014]; People v Walker, 267 AD2d 778, 780 [1999], lv denied 94 NY2d 926 [2000]), the detention did not "constitute a restraint on his . . . freedom of movement of the degree associated with a formal arrest" (People v Bennett, 70 NY2d at 894; see People v Figueroa, 156 AD3d 1348, 1348 [2017], lv denied 31 NY3d 1013 [2018]; People v Shelton, 111 AD3d 1334, 1336 [2013], lv denied 23 NY3d 1025 [2014]; People v Richardson, 70 AD3d 1327, 1328 [2010], lv denied 15 NY3d 756 [2010]; People v Buchta, 182 AD2d 853, 854 [1992], lv denied 80 NY2d 829 [1992]). As defendant was not in custody at the time that he was questioned as to whether he had heroin on him, Miranda [*5]warnings did not need to precede the inquiry (see People v Bennett, 70 NY2d at 894; People v Buchta, 182 AD2d at 854). Although defendant's subsequent statements at the scene were made while he was handcuffed, in custody and at a time when he had not been advised of his Miranda rights, Logue's testimony — which County Court explicitly found to be consistent and credible — established that such statements were spontaneous and not the product of questioning or its functional equivalent (see People v Ero, 139 AD3d 1248, 1249 [2016], lv denied 28 NY3d 929 [2016]; People v Kenyon, 108 AD3d 933, 936 [2013], lv denied 21 NY3d 1075 [2013]; People v Rabideau, 82 AD3d 1283, 1284 [2011], lv denied 17 NY3d 799 [2011]; People v Starks, 37 AD3d 863, 864 [2007]). Our conclusion that defendant's statements were not the product of pre-Miranda custodial interrogation disposes of defendant's further contention that the post-Miranda admissions that he made at the police station must be suppressed as fruit of the poisonous tree (see People v Coffey, 107 AD3d at 1050; People v Oakes, 57 AD3d 1425, 1426 [2008], lv denied 12 NY3d 786 [2009]; People v Walker, 267 AD2d at 780). Thus, County Court properly denied the motion to suppress.
Finally, we do not perceive the sentence imposed to be harsh or excessive. The sentence fell well within the permissible statutory range for defendant, a predicate violent felony offender. Considering defendant's criminal history and the fact that he agreed to the sentence as part of the plea agreement, we find no extraordinary circumstances or abuse of discretion warranting a modification of the sentence in the interest of justice (see People v Avera, 192 AD3d 1382, 1383 [2021], lv denied 37 NY3d 953 [2021]; People v Cancer, 185 AD3d 1353, 1354 [2020]; People v Latifi, 171 AD3d 1351, 1351 [2019]).
Egan Jr., J.P., Clark, Aarons and Reynolds Fitzgerald, JJ., concur.
ORDERED that the judgment is affirmed.

Footnotes

Footnote 1: Defendant was sentenced for the instant crimes during a combined sentencing proceeding in which he was also sentenced upon his conviction for an unrelated crime charged in a separate indictment. Defendant's conviction in that unrelated matter is not the subject of this appeal.