OPINION OF THE COURT
Pigott, J.
The primary issue on this appeal is whether defendant, by pleading guilty to all of the counts of an amended indictment, forfeited his right to challenge the legal sufficiency of the so-called “DNA indictment”[1] and the subsequent amendment that added only his name to that indictment. We hold that defendant, by pleading guilty, forfeited his right to challenge both the underlying “DNA indictment” and the amended indictment that named him.
L
On November 8, 1998, a man attacked a woman as she was entering her apartment. The man held a piece of broken glass to the victim’s throat, cutting himself and leaving blood on the victim’s coat. He forced the victim into her apartment, where he sexually assaulted her and stole her wallet. He then took her to an ATM and forced her to withdraw money. The victim escaped and was transported to a hospital where a rape kit was prepared. In addition to recovering the man’s blood from the victim’s coat, investigators also recovered a “joint” impression from the ATM receipt. Although 16 latent fingerprints were recovered from the crime scene, only six were deemed “usable.”
As part of the ensuing investigation, in addition to recovering the usable fingerprints and entering them in the state fingerprint identification system (but uncovering no match), investigators processed the crime scene, canvassed the apartment building for potential witnesses, obtained video surveillance footage from the ATM, distributed it to the press for *113 release to the public, and had the victim review mug shots and do a sketch with a New York City Police Department sketch artist. Although the police could not locate or identify the perpetrator, they were able to isolate the perpetrator’s DNA profile from the rape kit. In July 1999, investigators deemed the case “closed” because all leads had been exhausted.
On April 13, 2005, a New York County grand jury, utilizing the perpetrator’s DNA profile as an identifier, charged the perpetrator by “DNA indictment” (under the name “John Doe”) with one count of rape in the first degree (Penal Law § 130.35 [1]), two counts of sodomy in the first degree (Penal Law § 130.50 [1]), burglary in the first degree (Penal Law § 140.30 [3]), two counts of robbery in the first degree (Penal Law § 160.15 [3]), and attempted robbery in the first degree (Penal Law §§ 110.00, 160.15 [3]).
As part of the grand jury presentation, in addition to presenting the testimony of the victim, the People called an expert in DNA analysis. That expert, who worked for the Office of the Chief Medical Examiner (OCME), testified that the DNA profile developed from the rape kit matched the DNA profile taken from the blood found on the victim’s coat. The expert also testified that the chances that the perpetrator and another person shared the same DNA profile were less than a trillion to one.
In May 2011, while questioning defendant concerning an unrelated rape in Brooklyn, investigators recovered defendant’s DNA from a cigarette butt. That evidence was sent to OCME, which determined that the DNA profile taken from the cigarette butt matched the profile taken from the evidence obtained in the instant rape case. Investigators also matched the joint impression taken from the ATM receipt to the joint on defendant’s right index finger.
On June 9, 2011, the People moved, on notice to defendant, to amend the April 13, 2005 indictment to add defendant’s name to the caption. As bases for the amendment, the People explained that (1) a detective for the Manhattan Special Victims Squad had spoken with a detective with the Brooklyn Special Victims Squad, and learned that defendant had smoked a cigarette in the latter detective’s office and that detective had vouchered the cigarette butt and sent it to the OCME Forensic Biology laboratory; (2) the assistant director of the OCME Forensic Biology laboratory determined that the DNA profile from the cigarette butt matched the DNA profile taken from *114 the rape kit and victim’s coat; and (3) the detective for the Manhattan Special Victims Squad had spoken with a detective from the Latent Print Unit, who compared defendant’s joint impression to the impression left on the ATM receipt and determined that they matched. Defendant was arrested on June 10, 2011 and arraigned on the DNA indictment.
Defendant thereafter filed an omnibus motion seeking, among other things, an order denying the People’s motion to amend the indictment (CPL 210.20, 210.25 [defective indictment]) and dismissing the DNA indictment on the grounds that its prosecution was untimely (CPL 30.10 [statute of limitations], 210.20 [1] [f]) and was violative of defendant’s right to a speedy trial (CPL 30.20 [1]; 30.30 [1] [a]; 210.20 [1] [g]). As relevant here, defendant claimed that the DNA indictment was legally insufficient to establish the identity of the perpetrator and that the 2005 grand jury presentation lacked “competent testimonial and scientific evidence” to link the DNA profile to him. In addition, defendant argued that the People’s motion to amend the indictment contained “double hearsay” relative to the recovery of the cigarette butt and the matching of the fingerprint to the ATM receipt, and “hearsay” relative to the DNA match of the cigarette butt with the rape kit and victim’s coat. The People opposed those parts of the omnibus motion seeking dismissal of the DNA indictment and denial of the motion to amend.
Supreme Court denied defendant’s motion to dismiss the DNA indictment as defective and in violation of defendant’s right to a speedy trial, and upheld the amendment of the indictment. The court held that the prosecution was not time-barred on speedy trial grounds because investigators had exercised “reasonable diligence” in attempting to locate defendant.[2] Defendant then pleaded guilty to each count in the amended indictment. As a condition of the plea, he also executed a written waiver of his right to appeal. Supreme Court sentenced de *115 fendant as promised to a 15-year prison term on each count (to run concurrently), with five years’ postrelease supervision.
In affirming Supreme Court, the Appellate Division held that defendant was not deprived of his constitutional right to a speedy trial, and that defendant’s arguments concerning the DNA indictment, amended indictment and statute of limitations were forfeited by his guilty plea and “foreclosed by his valid waiver of the right to appeal” (126 AD3d 613, 613-614 [1st Dept 2015]). A Judge of this Court granted defendant leave to appeal (25 NY3d 1202 [2015]), and we now affirm.
I—I
Defendant does not challenge the voluntariness of his plea, nor does he claim that the DNA indictment or amended indictment failed to provide adequate notice of the charges. Rather, defendant contends that the DNA indictment was not based upon legally sufficient evidence establishing his identity as the perpetrator, and that the indictment was improperly amended by reliance on hearsay statements. Specifically, defendant argues that the evidence submitted in support of the amended indictment should have been presented through live, nonhear-say testimony before a grand jury so the grand jury had an opportunity to assess the evidence in determining whether defendant matched the DNA profile and make a determination as to whether defendant should be indicted. Essentially, defendant argues that the identification of the perpetrator is an essential element of proof that must be established before a grand jury, and that the procedure employed here deprived defendant of his fundamental constitutional right to be prosecuted by indictment for a felony offense, which, according to defendant, is jurisdictional in nature.[3]
Generally, a guilty plea marks the end of a criminal matter as opposed to providing a gateway to further litigation (see People v Hansen, 95 NY2d 227, 230 [2000], citing People v Taylor, 65 NY2d 1, 5 [1985]). Certain matters will survive a guilty plea, however, such as those involving “jurisdictional *116 defects” (People v Iannone, 45 NY2d 589, 600 [1978]) or “rights of a constitutional dimension that go to the very heart of the process” (Hansen, 95 NY2d at 230). “The distinction between jurisdictional and nonjurisdictional defects ‘is between defects implicating the integrity of the process . . . and less fundamental flaws, such as evidentiary or technical matters’ ” (People v Dreyden, 15 NY3d 100, 103 [2010], quoting Hansen, 95 NY2d at 231).
A jurisdictional defect in an indictment may not be waived by a guilty plea and can be raised for the first time on appeal (see Iannone, 45 NY2d at 600; People v Scott, 3 NY2d 148 [1957]). “An indictment is rendered jurisdictionally defective only if it does not charge the defendant with the commission of a particular crime, by, for example, failing to allege every material element of the crime charged, or alleging acts that do not equal a crime at all” (Hansen, 95 NY2d at 231, citing Iannone, 45 NY2d at 600).
Before a person accused of a felony is required to defend against that charge, the People must first persuade a grand jury that there are “sufficient legal reasons ... to believe the person guilty” (Hansen, 95 NY2d at 231 [citation omitted]). CPL 190.65 (1) provides, in relevant part, that “a grand jury may indict a person for an offense when (a) the evidence before it is legally sufficient to establish that such person committed such offense . . . and (b) competent and admissible evidence before it provides reasonable cause to believe that such person committed such offense.”
Insufficiency of an indictment’s factual allegations, however, does not constitute a jurisdictional defect that is reviewable by this Court (see Iannone, 45 NY2d at 600-601, citing People v Soto, 44 NY2d 683, 684 [1978]), and, once a guilty plea has been entered, “the sufficiency of the evidence before the Grand Jury cannot be challenged” (Hansen, 95 NY2d at 233 [citation omitted]). Thus, “ ‘[a] guilty plea generally results in a forfeiture of the right to appellate review of any nonjurisdictional defects in the proceedings’ ” (People v Konieczny, 2 NY3d 569, 572 [2004], quoting People v Fernandez, 67 NY2d 686, 688 [1986]).
Here, the DNA indictment properly charged a person with acts that constitute a crime, albeit identifying the individual by a unique DNA profile rather than by his name. As such, it avoided the jurisdictional infirmities we mentioned *117 in Iannone. Defendant’s challenge to the legal sufficiency of the DNA indictment is based on the failure to identify him as the perpetrator by name, but this alleged defect is not a jurisdictional one, and therefore, does not survive his guilty plea. By pleading guilty, defendant acknowledged that he was the person who committed the offense. Defendant therefore forfeited his challenge and is foreclosed from raising the issue on appeal. Once defendant pleaded guilty, his “ ‘conviction rest[ed] directly on the sufficiency of his plea, not on the legal or constitutional sufficiency of any proceedings which might have led to his conviction after trial’ ” (Hansen, 95 NY2d at 230, quoting People v Di Raffaele, 55 NY2d 234, 240 [1982]).
I—I
Defendant next claims that his challenge to the amended indictment based on the hearsay grounds survived his guilty plea.[4] We disagree.
The People’s motion to amend requested that the DNA indictment be amended to only reflect defendant’s name. In support of that motion, the People presented certain hearsay statements that, among other things, linked the DNA profile contained in the DNA indictment to DNA developed from a cigarette butt smoked by defendant. But, by pleading guilty to the amended indictment, defendant forfeited the argument that the People improperly utilized the hearsay statements to link defendant’s DNA to the DNA profile contained in the DNA indictment (see Hansen, 95 NY2d at 231-232; see e.g. People v McGuire, 122 AD3d 947, 947 [2d Dept 2014], lv denied 26 NY3d 969 [2015]; People v McKinney, 122 AD3d 1083, 1083 [3d Dept 2014], lv denied 25 NY3d 1167 [2015]; People v Torres, 117 AD3d 1497, 1498 [4th Dept 2014], lv denied 24 NY3d 963 [2014]). The amendment simply added defendant’s name to the indictment, so that it was listed along with his DNA profile (see People v Bogdanoff, 254 NY 16, 29 [1930]). As such, defendant’s hearsay challenges to the amended indictment are non-jurisdictional in nature and also did not survive defendant’s guilty plea or appeal waiver.
IV.
Finally, although defendant’s constitutional speedy trial argument survived defendant’s guilty plea and appeal waiver *118 (see People v Blakley, 34 NY2d 311, 314 [1974]), we affirm the Appellate Division’s determination that there was no constitutional violation (see People v Taranovich, 37 NY2d 442 [1975]).
Accordingly, the order of the Appellate Division should be affirmed.

. A “DNA indictment” is one that identifies the defendant by his or her DNA profile as opposed to by name.

. Defendant successfully sought reargument of Supreme Court’s ruling relative to the amended indictment and the statute of limitations determination. Upon reargument, Supreme Court denied defendant’s motion except as to the issue whether investigators exercised “reasonable diligence” in their attempt to identify defendant. Before a hearing on that issue was held, however, the People successfully moved for reconsideration of Supreme Court’s reargument order, with Supreme Court holding that the People had submitted additional evidence establishing that investigators had in fact exercised reasonable diligence, such that a hearing was unnecessary.

. Defendant makes the additional argument that his prosecution for rape in the first degree was untimely under the five-year statute of limitations that was in effect at the time. We have held, however, that “[t]he statute of limitations under CPL 30.10 is not a jurisdictional matter, nor is it a right of constitutional dimension” that survives a guilty plea (People v Parilla, 8 NY3d 654, 659 [2007]). As such, defendant’s statute of limitations argument is not properly before us.

. Defendant never denied that he was the perpetrator, merely asserting the evidentiary hearsay issue.