People v Urtz (2019 NY Slip Op 07808)





People v Urtz


2019 NY Slip Op 07808


Decided on October 31, 2019


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: October 31, 2019

108929

[*1]The People of the State of New York, Respondent,
v
Christopher Urtz, Appellant.

Calendar Date: September 4, 2019

Before: Egan Jr., J.P., Clark, Devine, Aarons and Pritzker, JJ.


Dominic J. Cornelius, Public Defender, Hudson (Michael C. Howard of counsel), for appellant.
Paul Czajka, District Attorney, Hudson (James A. Carlucci of counsel), for respondent.



Pritzker, J.
Appeal from a judgment of the County Court of Columbia County (Nichols, J.), rendered November 9, 2016, upon a verdict convicting defendant of the crime of possessing a sexual performance by a child (four counts).
Defendant was charged by indictment with 10 counts of possessing a sexual performance by a child arising out of an incident in May 2014 when defendant's wife opened a messaging application known as "KIK"[FN1] on defendant's cell phone and discovered an image of child pornography. Police searched defendant's cell phone — both manually and with forensic technology — and recovered seven images and three videos, which are the subject of this case. At trial, defense counsel, in the course of his trial order of dismissal, conceded that the images and videos included a sexual performance by a child and challenged only the elements involving knowing possession of the subject materials. After trial, the jury convicted defendant of 4 of the 10 counts (counts 1, 8, 9 and 10). Defendant was thereafter sentenced to a prison term of 1 to 3 years for each count, which were to run consecutively. Defendant appeals.
Defendant contends that the verdict is not supported by legally sufficient evidence and is against the weight of the evidence. When a defendant raises a claim of legal sufficiency of the evidence, "[the Court] view[s] the evidence in the light most favorable to the People and evaluate[s] whether there is any valid line of reasoning and permissible inferences which could lead a rational person to the conclusion reached by the jury on the basis of the evidence at trial and as a matter of law satisfy the proof and burden requirements for every element of the crime charged" (People v Kaplan, 168 AD3d 1229, 1229-1230 [2019] [internal quotation marks and citations omitted], lv denied 33 NY3d 1032 [2013]; see People v Bleakley, 69 NY2d 490, 495 [1987]). "When undertaking a weight of the evidence review, [the Court] must first determine whether, based on all the credible evidence, a different finding would not have been unreasonable and then weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony to determine if the verdict is supported by the weight of the evidence. When conducting this review, [the Court] consider[s] the evidence in a neutral light and defer[s] to the jury's credibility assessments" (People v Gill, 168 AD3d 1140, 1140-1141 [2019] [internal quotation marks and citations omitted]; see People v Pietoso, 168 AD3d 1276, 1277 [2019], lv denied 33 NY3d 1034 [2019]). As relevant here, "[a] person is guilty of possessing a sexual performance by a child when, knowing the character and content thereof, he [or she] knowingly has in his [or her] possession or control, or knowingly accesses with intent to view, any performance which includes sexual conduct by a child less than sixteen years of age" (Penal Law § 263.16). "While this crime requires proof that the defendant knew of the character and content of the performance, it also specifically requires that the defendant knowingly had the sexual performance by a child in his or her possession or control. To knowingly possess, some affirmative act is required (printing, saving, downloading, etc.) to show that [the] defendant in fact exercised dominion and control over the images" (People v Yedinak, 157 AD3d 1052, 1053 [2018] [internal quotation marks and citations omitted]; see People v Henry, 166 AD3d 1289, 1290 [2018]).
Ryan Hogan — a State Trooper — testified that, on May 6, 2014, he arrived at defendant's home after defendant's wife opened unread messages on the KIK account on defendant's phone and saw what she believed was child pornography. According to Hogan, defendant handed him the phone at defendant's residence, and Hogan confirmed that the image that defendant received was, in fact, child pornography. After Hogan secured the phone and defendant signed a voluntary consent form to search the phone, defendant conceded to Hogan that the KIK account belonged to him. Defendant then provided Hogan with the username for the account — "I like 'em younger" — as well as the corresponding email address and password. Chad Drozd — an investigator with the State Police — testified that he and another investigator subsequently interviewed defendant, and that this interview was videotaped.[FN2]
Timothy Milone — an investigator with the State Police in the computer crimes unit — explained that he extracted data from defendant's phone and copied it onto a thumb drive, which allowed him to examine all videos and images on the phone. According to Milone, he found seven images and three videos involving child pornography. As part of the extraction and examination, Milone was able to obtain, and testified about, the various dates and times when the videos (exhibit Nos. 8, 9 and 10 [hereinafter the videos]) and two of the images (exhibit Nos. 1 and 2) were placed on the phone.[FN3] As to exhibit No. 1, Milone testified that this photograph was found in the Digital Camera Internal Memory, which is a subfolder that cannot be located on the phone without the use of forensic tools because it was contained in the cache memory file.[FN4] Milone explained that images in the cache file were once on the screen but had been removed for one reason or another. He conceded that "the phone itself . . . takes data, whether its [sic] text, or images, or videos, and on its own, places those items into a cache area, a temporary storage area." As to the videos, Milone explained that they were found in a file, called "CO dot happy bits," in the video KIK application — a video player that is an application "different and separate from [the] KIK" application. The videos had not been deleted and Milone showed the jury how they could be accessed directly from defendant's phone, without the use of a forensic tool.[FN5] Milone also testified that, although the videos came through the KIK application, Milone was unable to tell whether a user of the application could, at the time the material is received by the phone, know whether the message received is a picture, video, text, link or chat. Furthermore, Milone testified that he could not conclude who was in possession of the phone when the images were received.
After the People rested, defendant proffered his own proof, including the testimony of Brenda Raup, defendant's mother-in-law, with whom he and his wife were living in May 2014. Raup explained that on May 6, 2014, at approximately 5:00 p.m., she was in the living room when she heard defendant's wife become "irate" in the kitchen. According to Raup, defendant's wife was upset about an image of a young child that she had found on defendant's phone. At the wife's suggestion, the police were called and, when they arrived, defendant's wife showed Hogan defendant's phone.
Defendant also testified to the events of the evening of May 6, 2014. He explained that he did not "technically" own a cell phone at the time and was using a phone that his wife had purchased. Defendant denied having exclusive use of the phone, stating that his wife and his children also used the phone, and that no password was required to access it. Defendant testified that, at approximately 5:30 p.m., his wife was checking her bank account on the subject phone when she noticed two messages come in from KIK messenger. Defendant conceded that he had signed up for a KIK account and that he used the name "I like 'em younger, 37-year-old guy" because, in different dating websites, "a lot of older ladies were messaging [him] constantly" and he "wanted people to know that [he] liked them under [his] age" and that, originally, his display name was "I'm a 37-year-old guy." Defendant testified that both he and his wife used KIK "to chat with other users and also to get pic[tures] of adult pornography," which included both videos and images. According to defendant, he later changed his display name to "18 plus" and "girls only," but, on cross-examination, defendant conceded that "18 plus" was not currently the display name because he had changed it since then. Defendant testified that he was not able to change his username. Defendant also testified that he never viewed exhibit Nos. 8 or 9, but that he did see exhibit No. 10 when it was sent to him in an instant message. According to defendant, he opened the video and, after viewing it, he closed it out and deleted the message. Defendant claimed that he does not know where the picture goes when it is deleted from a cell phone.
Despite telling Drozd during his interview that he had not received any child pornography prior to May 6, 2014, defendant testified at trial that, in fact, he had received child pornography before this date but claimed that it was not of children "that young." Defendant admitted at trial that he had not reported this to the police, despite having told the police during his interview that he would have reported it to the police had he received child pornography prior to receiving exhibit No. 2. Defendant also acknowledged that he told the police that he had saved pictures of "16, 17 [and] 18 year olds, [but] not any younger than that." He was also presented with his prior statement to police wherein he stated, "There are some that, you know, I totally downloaded and everything, um, but, I mean, I don't know the exact age of them" and where he confirmed that he downloaded all of the videos from the KIK application and traded some "questionable material."[FN6] When asked if he recalled telling Milone that he had somewhere between one and five videos of young children on his phone, defendant responded affirmatively. Defendant stated that he, however, did not view all the materials sent to him because if "[he] notice[d] that it didn't look right, [he] would close it out." Defendant testified that, whenever he liked a video, he would save it in the gallery of pictures and videos. He further testified that he had never seen the video KIK application on his phone and he did not know videos were saved there; however, on cross-examination, when confronted with testimony from his interview, defendant conceded that he knew of the video KIK application and knew that videos were saved there.
Turning first to defendant's legal sufficiency arguments, defendant asserts that, like counts 3 through 7, of which he was not convicted, defendant could not access exhibit No. 1 through his phone and, thus, the evidence is legally insufficient to prove that he knowingly accessed or possessed exhibit No. 1. Although there is little evidence establishing that exhibit No. 1 was on the screen more than once or that defendant was using the phone at the time the image was accessed (compare People v Yedinak, 157 AD3d at 1053), viewing the evidence in the light most favorable to the People and, in light of defendant's username and his admission that he saved pornographic material involving 16, 17 and 18 year olds, that he traded "questionable material," that he was the primary user of the cell phone and that he received pictures of this nature before, there is a valid line of reasoning and permissible inferences that could lead a rational person to conclude that defendant knowingly accessed exhibit No. 1 with the intent to view it on his phone (see People v Petke, 125 AD3d 1103, 1103-1104 [2015]). As to his legal sufficiency claim with respect to counts 8, 9 and 10, inasmuch as the video KIK application was on defendant's phone and he conceded to knowing of its existence and that files are saved there, and in light of testimony establishing that defendant downloaded videos involving child pornography, the evidence supporting these challenged counts was also legally sufficient (see People v Henry, 166 AD3d at 1290). With respect to defendant's weight of the evidence challenge, inasmuch as the jury could have credited defendant's testimony and found that he did not have the requisite knowledge to sustain these convictions, a different verdict would not have been unreasonable (see People v Madigan, 169 AD3d 1467, 1469 [2019], lv denied 33 NY3d 1033 [2019]; People v Henry, 166 AD3d at 1292). However, defendant's testimony that he did not knowingly access or possess the subject materials was challenged by his earlier statements that he had, in fact, saved pornographic videos involving children. Also, defendant testified that he had recently changed his display name — "I like em' younger" — to omit "18 plus," and he misrepresented to police that he had never received similar images involving children. Thus, "[g]iven this evidence, a jury could, as it did here, reasonably discredit defendant's testimony and determine that defendant knew of the character and content of the videos and image[] and knowingly possessed [and accessed] them" (People v Henry, 166 AD3d at 1289; see People v Yedinak, 157 AD3d at 1055-1056). Accordingly, when viewing the evidence in a neutral light and deferring to the jury's credibility determinations, we find that the verdict was not against the weight of the credible evidence (see People v Yedinak, 157 AD3d at 1056).[FN7]
Defendant contends that County Court should not have permitted the People to amend the indictment to include the language criminalizing "access with intent to view" because the grand jury was instructed without such language and, thus, the amendment constituted a change in the theory of their case. We disagree. "At any time before or during trial, the court may, upon application of the [P]eople and with notice to the defendant and opportunity to be heard, order the amendment of an indictment with respect to defects, errors or variances from the proof relating to matters of form, time, place, names of persons and the like, when such an amendment does not change the theory or theories of the prosecution as reflected in the evidence before the grand jury which filed such indictment, or otherwise tend to prejudice the defendant on the merits" (CPL 200.70 [1]; see People v Guerrero, 28 NY3d 110, 121 [2016]; People v Hawkins, 130 AD3d 1298, 1301-1302 [2015], lv denied 26 NY3d 968 [2015]).
A review of the record reveals that the prosecutor, prior to the presentation of any evidence, thoroughly instructed the grand jurors on the law and, during these instructions, included the language "knowingly accessed with intent to view." However, after the close of proof, while answering questions posed by the grand jurors prior to deliberations, the prosecutor read a portion of the relevant law and omitted the language "knowingly accessed with intent to view." Also, defendant's contention that the amendment was improper is belied by his demand for a bill of particulars wherein he stated, "With regard to each [c]ount of the [i]ndictment, set forth whether it is alleged that [defendant] 'knowingly accessed with intent to view' such image and/or video." In reply to that particular demand, the People responded by stating, "With regard to each [c]ount of the [i]ndictment, the defendant knowingly accessed with intent to view such image on or before [May 6, 2014]." Defendant's demand and the People's response were filed approximately six months prior to the People's order to show cause requesting permission to amend the indictment. As such, it is evident from the record that the amendment to the indictment did not alter the theory of the case or prejudice defendant and, thus, the court did not err in granting the amendment (see CPL 200.70 [1]; People v Hall, 125 AD3d 1095, 1096 [2015]; People v Giordano, 274 AD2d 748, 749 [2000]).
We are similarly unpersuaded by defendant's allegation that he was deprived of the effective assistance of counsel because defense counsel conceded that all 10 items that were the subject of the indictment depicted a sexual performance by underage children. "'[C]ounsel will not be found to be ineffective on the basis that he or she failed to make an argument or motion that has little or no chance of success'" (People v Brown, 169 AD3d 1258, 1260 [2019], lv denied 33 NY3d 1029 [2019], quoting People v Thorpe, 141 AD3d 927, 935 [2016], lv denied 28 NY3d 1031 [2016]). Here, although the jury must determine whether the pornographic material represents actual children (see People v Foley, 257 AD2d 243, 253-254 [1999], affd 94 NY2d 668 [2000], cert denied 531 US 875 [2000]), because it is apparent from the videos and images, which the jury had the opportunity to view, that the sexual acts involve children, defense counsel was not ineffective for failing to raise an argument that had little chance of success (see People v Lindsey, 172 AD3d 1764, 1767 [2019]; People v Brown, 169 AD3d at 1260). Furthermore, because the theory of the defense's case was that the People failed to prove that defendant knowingly possessed the images and the videos, defendant fails to establish a lack of legitimate trial strategy in defense counsel's decision to concede the age of the minors (see People v Ildefonso, 150 AD3d 1388, 1389 [2017], lv denied 30 NY3d 980 [2017]; People v Perry, 148 AD3d 1224, 1225 [2017]). Viewing counsel's performance in totality, and mindful that defendant was acquitted of 6 of the 10 charges against him, we find that defendant received meaningful representation (see People v Valentin, 173 AD3d 1436, 1441 [2019], lvs denied ___ NY3d ___, ___ [Sept. 17, 2019]; People v Turner, 172 AD3d 1768, 1772 [2019], lvs denied 34 NY3d 930, 939 [2018]).
Finally, we find no merit to defendant's contention that the sentence imposed was harsh and excessive. "'Sentencing generally rests within the discretion of the trial court'" (People v Turner, 172 AD3d at 1773, quoting People v Caruso, 34 AD3d 863, 865 [2006], lv denied 8 NY3d 879 [2007]). Moreover, "[a] sentence that falls within the permissible statutory range will not be disturbed unless it can be shown that the sentencing court abused its discretion or extraordinary circumstances exist warranting a modification" (People v Vega, 170 AD3d 1266, 1274 [2019], lv denied 33 NY3d 1074 [2019]; People v Malloy, 152 AD3d 968, 971 [2017], lv denied 30 NY3d 981 [2017]). In imposing sentence, County Court considered defendant's "complete disregard of the criminality involved" in his conduct, as well as the fact that defendant repeatedly committed the same crime. In addition, notwithstanding the recommendation in the presentence investigation report that, with education and counseling, probation would be an appropriate sentence, the sentence imposed was within the permissible statutory range and less than the maximum allowed sentence (see Penal Law § 70.00 [2] [e]; [3] [b]; People v Gassner, 118 AD3d 1221, 1221-1222 [2014], lv denied 23 NY3d 1062 [2014]; People v Smoke, 15 AD3d 729, 730 [2005]). In view of the foregoing, we find no extraordinary circumstances or abuse of discretion that warrant a reduction of the sentence in the interest of justice (see People v Pitt, 170 AD3d 1282, 1286 [2019], lv denied 33 NY3d 1072 [2019]; People v Guzy, 167 AD3d 1230, 1238 [2018], lv denied 33 NY3d 948 [2019]).
Egan Jr., J.P., Clark, Devine and Aarons, JJ., concur.
ORDERED that the judgment is affirmed.



Footnotes

Footnote 1: KIK was described as a messaging service that can be used on devices with or without cellular plans to communicate with others via text message.

Footnote 2: The video of the interview was published to the jury and a written transcript of the interview was also provided to the jury.

Footnote 3: The first 10 exhibits admitted at trial by the People correspond respectively to the 10 counts in the indictment.

Footnote 4: Exhibit Nos. 2 through 7 were also located in the cache memory file.

Footnote 5: The location of the video KIK application on the phone, the location of the videos in the folder and the accessibility of the videos through the phone were corroborated by defendant's expert witness.

Footnote 6: Defendant later clarified that his reference to "questionable material" referred to adult pornography.

Footnote 7: Given that defendant's "convictions are supported by legally sufficient trial evidence, [his] challenges to the legal sufficiency of the evidence presented to the grand jury and the instructions given during the proceeding are precluded" (People v Flower, 173 AD3d 1449, 1454 n [2019] [internal quotation marks and citations omitted], lv denied 34 NY3d 931 [2019]; see CPL 210.30 [6]).