People v Bowman (2021 NY Slip Op 02846)





People v Bowman


2021 NY Slip Op 02846


Decided on May 6, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:May 6, 2021

110475
[*1]The People of the State of New York, Respondent,
v
Mark Bowman, Also Known as Merk, Appellant.

Calendar Date:March 10, 2021

Before:Egan Jr., J.P., Aarons, Pritzker, Reynolds Fitzgerald and Colangelo, JJ.

Aaron A. Louridas, Delmar, for appellant, and appellant pro se.
P. David Soares, District Attorney, Albany (Emily Schultz of counsel), for respondent.



Colangelo, J.
Appeal from a judgment of the County Court of Albany County (Herrick, J.), rendered May 13, 2016, convicting defendant upon his plea of guilty of the crime of attempted murder in the second degree.
During the early morning hours of May 5, 2015, defendant and Jaushi'ir Weaver shot into a crowd of people gathered outside a residential building in the City of Albany to avenge the murder of defendant's cousin. Two individuals in the crowd were struck and injured, and a third victim was fatally wounded. Thereafter, defendant and Weaver, along with their get-away driver, Rashad Quintyne, were charged in a multicount indictment with various crimes in connection with the shooting. Following a combined pretrial Dunaway/Huntley/Wade/Mapp hearing, County Court, among other rulings, denied defendant's suppression motions made with respect to his oral and written statements to police, identification testimony and tangible physical evidence. Prior to trial, and following a Sandoval/Molineaux hearing, the court partially granted the People's motion to introduce evidence of prior uncharged crimes and/or bad acts attributed to defendant and his codefendants that occurred earlier in the evening of the shootings. Defendant thereafter pleaded guilty to attempted murder in the second degree in full satisfaction of the indictment and waived his right to appeal, with the understanding that he would be sentenced, as a violent predicate offender, to a prison term of 25 years followed by five years of postrelease supervision.[FN1] County Court sentenced defendant to a reduced prison term of 21 years, followed by five years of postrelease supervision. This appeal ensued.
We agree with defendant that his waiver of the right to appeal was invalid. "A waiver of the right to appeal is effective only so long as the record demonstrates that it was made knowingly, intelligently and voluntarily" (People v Lopez, 6 NY3d 248, 256 [2006] [citation omitted]; see People v Thomas, 34 NY3d 545, 559 [2019]). "'In determining whether the record demonstrates that a defendant understood an appeal waiver's consequences, proper considerations include the defendant's consultation with counsel and on-the-record acknowledgments of understanding, a written appeal waiver that supplements or clarifies the court's oral advice and the defendant's experience with the criminal justice system'" (People v Gamble, 190 AD3d 1022, 1023-1024 [2021], lv denied ___ NY3d ___ [Mar. 2, 2021], quoting People v Thomas, 34 NY3d at 560). "[O]f paramount importance is the trial court's responsibility to ensure that [a] defendant's full appreciation of the consequences and understanding of the terms and conditions of the plea and appeal waiver are apparent on the face of the record" (People v Thomas, 34 NY3d at 560 [internal quotation marks and citation omitted]).
A review of County Court's brief colloquy with defendant reflects that the court "did not inform defendant that the right to appeal was separate and [*2]distinct from the rights [he] was forfeiting by pleading guilty and did not adequately explain the nature of the waiver or ascertain defendant's knowledge of its ramifications" (People v Williams, 190 AD3d 1192, 1193 [2021]). In addition, the written waiver at issue was overbroad and purported to "encompass[] all issues arising from th[e] criminal proceeding. Although we have excused overly-broad written waivers where the court's oral colloquy with the defendant still permit[ted] the conclusion that the counseled defendant understood the distinction that some appellate review survived, County Court's terse discussion of defendant's appellate rights fell short of drawing that distinction" (People v Gervasio, 190 AD3d 1190, 1190-1191 [2021] [internal quotation marks and citations omitted]). Indeed, the waiver at issue misadvised defendant that, as part of the plea bargain, he was "waiving and giving up all of [his] rights to appeal on all legal and constitutional grounds that [he] might have and that [his] waiver of [his] right to appeal will include not only everything that has occurred in this prosecution through today, [his] waiver of appeal will be extended forward in time and date to include the sentencing proceeding and the sentence imposed so long as the sentence imposed is consistent with the plea agreement in this case." The record further demonstrates that County Court did not ascertain from defendant that he had conferred with counsel prior to the written waiver's execution (see People v Burnell, 183 AD3d 931, 932 [2020], lv denied 35 NY3d 1043 [2020]; People v Dolder, 175 AD3d 753, 754 [2019]). As such, the record fails to demonstrate that defendant knowingly, intelligently and voluntarily waived his right to appeal (see People v Gamble, 190 AD3d at 1023; People v Brito, 184 AD3d 900, 901 [2020]; People v Burnell, 183 AD3d at 932; People v Alexander, 174 AD3d 1068, 1068 [2019], lv denied 34 NY3d 949 [2019]).
Defendant's challenge to the voluntariness of his plea is unpreserved for our review due to his failure to file an appropriate postallocution motion (see People v Aponte, 190 AD3d 1031, 1032 [2021]; People v Apelles, 185 AD3d 1298, 1299 [2020], lv denied 35 NY3d 1092; People v Brito, 184 AD3d at 901; People v Schmidt, 179 AD3d 1384, 1385 [2020]). "Furthermore, the narrow exception to the preservation requirement was not implicated as the record does not disclose that defendant made any statements during the plea colloquy or at sentencing that cast doubt upon his guilt or otherwise called into question the voluntariness of the plea" (People v Botts, 191 AD3d 1044, 1045 [2021] [citation omitted], lv denied ___ NY3d ___ [Mar. 29, 2021]; see People v Rodriguez, 185 AD3d 1233, 1235 [2020], lv denied 36 NY3d 975 [2020]; People v Schmidt, 179 AD3d at 1385). As to defendant's challenge to County Court's Molineaux ruling, his "entry of a valid guilty plea forfeited [his] right to challenge any aspect of [that] ruling" (People v Bowden[*3], 177 AD3d 1037, 1038-1039 [2019] [internal quotation marks and citation omitted], lv denied 34 NY3d 1157 [2020]).
Next, defendant contends that County Court erred in failing to suppress Weaver's pretrial identification of defendant from a photo array. According to the testimony at the suppression hearing, the police recovered video footage from a surveillance camera near the location of the shootings after Weaver and Quintyne had been taken into custody and before defendant was arrested. The hearing testimony established that Weaver, when shown the video, immediately recognized and identified defendant in the video as an individual he knew as "Merk." Weaver was then shown a photo array containing six "mug-shot" photos and selected defendant's photo. We find that, under these circumstances, Weaver's identification of defendant from the photo array was merely confirmatory, and no Wade issue was present (see People v Cuevas, 133 AD2d 504, 505 [1987], lv denied 70 NY2d 930 [1987]). Had a Wade issue been present, we would find that the photo array was not unduly suggestive. "A photo array is unduly suggestive if some feature or characteristic of one of the depicted individuals or photographs is so unique or distinctive that it draws the viewer's attention to that photograph, thereby indicating that the police have selected that particular individual" (People v Marryshow, 162 AD3d 1313, 1313 [2018] [citations omitted]; see People v Johnson, 176 AD3d 1392, 1394 [2019], lvs denied 34 NY3d 1129, 1131 [2020]; People v Quintana, 159 AD3d 1122, 1126 [2018], lv denied 31 NY3d 1086 [2018]). Although it is not required that the individuals in a photo array be nearly identical to the defendant, their characteristics "must be sufficiently similar" to those of the defendant "so as to not 'create a substantial likelihood that the defendant would be singled out for identification'" (People v Lanier, 130 AD3d 1310, 1312 [2015], lv denied 26 NY3d 1009 [2015], quoting People v Chipp, 75 NY2d 327, 336 [1990], cert denied 498 US 833 [1990]; see People v Cole, 150 AD3d 1476, 1477-1478 [2017], lv denied 31 NY3d 1146). All of the photos depict black males with similar eye color and facial hair with indistinguishable backgrounds behind them, in similar lighting conditions. Although, as defendant contends, the men are not at identical distances from the camera, nothing about defendant's photo was "so distinctive that it would have drawn the viewer's attention to that photograph, so as to create a substantial likelihood that he would be singled out for identification" (People v Marryshow, 162 AD3d at 1315; see People v Al Haideri, 141 AD3d 742, 743-744 [2016], lv denied 28 NY3d 1025 [2016]; People v Lanier, 130 AD3d at 1312).
We also reject defendant's contention that the search warrant, obtained by police to photograph defendant's injuries, failed to provide a sufficiently particular description of him [FN2] and was not supported by probable cause. "To establish probable [*4]cause for the issuance of a search warrant, the warrant application must demonstrate that there is sufficient information to support a reasonable belief that evidence of a crime may be found in a certain place" (People v Cazeau, 192 AD3d 1388, 1388 [2021] [internal quotation marks and citations omitted]; see People v Luciano, 152 AD3d 989, 991 [2017], lv denied 30 NY3d 1020 [2017]). Here, the search warrant directed the police to search "[t]he person of Mark Bowman dob 08/27/90" for "[e]vidence consisting of physical injury including but not limited to bruising, swelling, lacerations, scratches, scrapes and scabbing and to document through photographic collection." As County Court correctly determined, the descriptions in the warrant and its supporting affidavit were sufficiently definite to enable the police to identify the person and evidence that the magistrate had determined should be the subject of the search and seizure (see People v Cowan, 177 AD3d 1173, 1176 [2019], lv denied 34 NY3d 1127 [2020]). In addition, the applicant's sworn allegations of fact and evidentiary material offered in support of the search warrant [FN3] was sufficient to support a reasonable conclusion that evidence of a crime was to be found on defendant's person (see People v Schaefer, 163 AD3d 1179, 1181 [2018], lv denied 32 NY3d 1007 [2018]; People v Vanness, 106 AD3d 1265, 1266-1267 [2013], lv denied 22 NY3d 1044 [2013]), thus providing probable cause for the issuance of the search warrant.
Next, defendant argues that County Court erred in denying his motion to suppress his oral and written statements to a police detective that he contends were made while he was in custody and after he had invoked his right to counsel. It is well settled that Miranda warnings are required prior to custodial interrogation and that a statement obtained in violation of this principle must be suppressed (see Miranda v Arizona, 384 US 436, 471-472 [1966]; People v Berg, 92 NY2d 701, 704 [1999]; People v Henry, 114 AD3d 1025, 1026 [2014], lv dismissed 22 NY3d 1199 [2014]). "[T]he right to counsel indelibly attaches as soon as 'a defendant in custody unequivocally requests the assistance of counsel'" (People v Harris, 177 AD3d 1199, 1203 [2019], lv denied 35 NY3d 970 [2020], quoting People v Glover, 87 NY2d 838, 839 [1995]; see People v Fiorino, 130 AD3d 1376, 1379 [2015], lv denied 26 NY3d 1087 [2015]). "Whether a particular request is or is not unequivocal is a mixed question of law and fact that must be determined with reference to the circumstances surrounding the request[,] including the defendant's demeanor, manner of expression and the particular words found to have been used by the defendant" (People v Glover, 87 NY2d at 839 [citations omitted]; accord People v Henry, 133 AD3d 1085, 1086 [2015]; People v Jemmott, 116 AD3d 1244, 1246 [2014]). "The relevant inquiry is whether a reasonable police officer would have understood the statement in question as a request for an attorney, [*5]and a statement that is merely a forewarning of a possible, contingent desire to confer with counsel rather than an unequivocal statement of [a] defendant's present desire to do so is not sufficient to invoke the right to counsel" (People v Slocum, 133 AD3d 972, 975 [2015] [internal quotation marks and citations omitted], appeal dismissed 29 NY3d 954 [2017]). "Generally, remarks that are subject to numerous objective interpretations or a defendant's mere 'suggestion that counsel might be desired . . . will not suffice'" (People v Higgins, 124 AD3d 929, 931 [2015], quoting People v Mitchell, 2 NY3d 272, 276 [2004]).
The video recordings of defendant's interrogation and the hearing testimony of, among others, the detective who primarily questioned defendant support County Court's determination that defendant did not invoke his right to counsel. Defendant's initial interaction with the detective occurred in an interview room at the police station after defendant had been taken into custody for an unrelated investigation. Defendant complained of pain from injuries he claimed he sustained when police tackled him to take him into custody. After emergency medical services personnel assessed his injuries, it was decided that defendant would be taken to the hospital. Prior to the transport, the detective and another detective holding a camera entered the room and requested to photograph defendant's injuries. Defendant initially consented stating, "Yeah, take the pictures," but then refused to allow photographs, stating, "I don't want the pictures taken. Take me up to the hospital." Defendant then stated, "No pictures until my lawyer gets here," and repeated "no pictures until my lawyer gets on set." The video recordings and the hearing testimony reflect that upon defendant's return to the interview room approximately 2½ hours later, the detective and his partner entered the room, took pedigree information from defendant and read defendant his Miranda warnings. After defendant indicated that he understood the warnings and was asked if he was willing to answer questions, defendant asked, "What if I say no," to which the detective responded, "You can say no, we can ask them, you can say no," and asked, "What if I got a lawyer" and "what if the lawyer that I got doesn't come." Defendant was then Mirandized a second time and asked if he was willing to answer questions. During the next 3½ hours, defendant was questioned and eventually admitted, among other things, that he was at the scene of the shootings and fired some shots.
We find that defendant's statements — "No pictures until my lawyer gets here," and "no pictures until my lawyer gets on set" — were not an unequivocal request for counsel. The hearing testimony reflects that the statements were interpreted by the detective as referring to a lawyer for his injuries, which is a reasonable interpretation in the context of defendant's claim that the police were responsible for his injuries. In [*6]our view, defendant's remarks are subject to more than one objective interpretation and do not constitute an unequivocal request for counsel (see People v Higgins, 124 AD3d at 931; People v Isaac, 224 AD2d 993, 994 [1996], lv denied 88 NY2d 937 [1996]).
We reach the same conclusion with respect to defendant's post-Miranda questions. "[W]hat if I got a lawyer" and "What if the lawyer that I got doesn't come" can reasonably be viewed as related hypothetical requests for counsel (see People v Meadows, 180 AD3d 1244, 1245 [2020], lv denied 35 NY3d 994 [2020]), or a mere forewarning of a possible, contingent desire to confer with counsel as opposed to a present desire to do so (see People v Slocum, 133 AD3d at 975). "The suppression court's credibility determinations and choice between conflicting inferences to be drawn from the proof are granted deference and will not be disturbed unless unsupported by the record" (People v Barski, 66 AD3d 1381, 1382 [2009] [internal quotation marks and citations omitted], lv denied 13 NY3d 905 [2009]). We find that the record supports County Court's factual findings that defendant was given Miranda warnings that he acknowledged and knowingly waived and that no force, threats, promises or other forms of coercion or unfair inducement were used to secure defendant's statements, and the motion to suppress his statements was properly denied.
We are unpersuaded that the sentence imposed was harsh and excessive. Initially we note that, given the invalidity of the appeal waiver, defendant's challenge to the severity of his sentence is not foreclosed (see People v Williams, 190 AD3d at 1193; People v Cruz, 186 AD3d 932, 933 [2020], lv denied 35 NY3d 1112 [2020]). "A sentence that falls within the permissible statutory range will not be disturbed unless it can be shown that the sentencing court abused its discretion or extraordinary circumstances exist warranting a modification" (People v Cancer, 185 AD3d 1353, 1354 [2020] [internal quotation marks and citations omitted]; see People v Barzee, 190 AD3d 1016, 1021-1022 [2021]). County Court sentenced defendant to a reduced prison term that was four years less than the sentencing promise made when defendant pleaded guilty. The transcript of the sentencing proceeding reflects that the court considered defendant's circumstances, including the severity of the crime and defendant's cooperation in testifying against a codefendant, which helped the People secure a conviction in that case. Upon review of the record, we discern no abuse of discretion or extraordinary circumstances warranting a modification of the sentence in the interest of justice (see People v Bombard, 187 AD3d 1417, 1420 [2020]; People v Cancer, 185 AD3d at 1354; People v Rodriguez, 185 AD3d 1296, 1297 [2020]). Finally, we find unpreserved defendant's pro se contention that County Court erred in permitting the People to proceed on the first indictment, and his remaining pro se contentions are without merit[*7].
Egan Jr., J.P., Aarons, Pritzker and Reynolds Fitzgerald, JJ., concur.
ORDERED that the judgment is affirmed.



Footnotes

Footnote 1: Weaver was convicted, after a jury trial, of murder in the second degree and criminal possession of a weapon in the second degree and his judgment of conviction was affirmed on appeal (People v Weaver, 167 AD3d 1238 [2018], lv denied 33 NY3d 955 [2019]).

Footnote 2: The issuing magistrate was provided with defendant's name, date of birth and a black and white copy of the photo array.

Footnote 3: The documents provided to the magistrate included various case reports, the arrest report pertaining to Weaver's arrest, the photo array and still images from the video surveillance.