People v Kelly (2023 NY Slip Op 06003)

People v Kelly

2023 NY Slip Op 06003

Decided on November 22, 2023

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:November 22, 2023

112256
[*1]The People of the State of New York, Respondent,
v
Ruthann E. Kelly, Appellant.

Calendar Date:October 11, 2023

Before:Clark, J.P., Aarons, Reynolds Fitzgerald, Fisher and McShan, JJ.

John A. Cirando, Syracuse, for appellant.
J. Anthony Jordan, District Attorney, Fort Edward (Devin J. Anderson of counsel), for respondent.

Aarons, J.
Appeal from a judgment of the County Court of Washington County (Kelly S. McKeighan, J.), rendered February 21, 2020, convicting defendant upon her plea of guilty of the crimes of promoting prison contraband in the first degree, criminal possession of a controlled substance in the fifth degree and promoting prison contraband in the second degree (two counts).
In 2019, defendant went to a correctional facility to visit an incarcerated individual. Upon proceeding through security, a canine alerted to the possible presence of narcotics on defendant. An investigator accompanied defendant to a separate conference room where defendant apologized, admitted that she had "some stuff" and removed small balloons from her pants containing Xanax, Lyrica and marihuana. In connection with this, defendant was charged by indictment with promoting prison contraband in the first degree, criminal possession of a controlled substance in the fifth degree and two counts of promoting prison contraband in the second degree. In an omnibus motion, defendant, among other things, sought suppression of the oral and written statements that she had made to the investigator, in addition to the physical evidence obtained. County Court denied the motion with respect to the physical evidence but reserved decision relative to the oral and written statements pending the completion of a Huntley hearing. Following a Huntley hearing, the court denied the motion seeking to suppress defendant's oral and written statements. Defendant then pleaded guilty as charged and was sentenced to various concurrent prison terms and periods of postrelease supervision. Defendant appeals.
As an initial matter, by pleading guilty, defendant is foreclosed from asserting that the evidence presented to the grand jury was not legally sufficient (see People v Hansen, 95 NY2d 227, 232 [2000]; People v Wilburn, 158 AD3d 894, 894-895 [3d Dept 2018], lv denied 31 NY3d 1123 [2018]). Defendant also contends that count 1 of the indictment charging her with promoting prison contraband in the first degree was jurisdictionally defective because 10 pills of Xanax do not constitute "dangerous contraband" within the meaning of Penal Law § 205.25 (1). Although defendant characterizes the claim as one presenting a jurisdictional defect to count 1 of the indictment, the claim is directed to the evidentiary sufficiency of the indictment and, therefore, was forfeited by the guilty plea (see People v Guerrero, 28 NY3d 110, 116 [2016]; People v Turner, 202 AD3d 1375, 1377 [3d Dept 2022], lv denied 38 NY3d 1036 [2022]; People v Brice, 146 AD3d 1152, 1154 [3d Dept 2017], lv denied 29 NY3d 996 [2017]). Defendant's argument that County Court erred in granting the People's motion to amend the indictment is unpreserved given that defendant did not oppose the motion (see People v Houze, 177 AD3d 1184, 1187 [3d Dept 2019], lv denied 34 NY3d 1159 [2020]).
Defendant contends that County Court erred by not suppressing her oral and written [*2]statements because they were made in a custodial setting and without Miranda warnings.[FN1] The Huntley hearing testimony reflects that, when defendant entered the visiting area of the correctional facility, she had passed through multiple doors and security gates. To get to the area by the visitor room and where the investigator and canine handler were posted, defendant went through a large, heavy metal door and then numerous security gates. The investigator explained that only one set of gates could be open at a time for security purposes. After defendant proceeded through the last gate, a canine alerted to the possible presence of narcotics on defendant. When the canine alerted, the metal door behind defendant was closed and would have required a security officer to push a button to open it. The canine handler then advised an investigator about the alert.
The investigator asked defendant to accompany him, to which defendant agreed. They proceeded to an administrative wing of the correctional facility, which required a security guard to buzz them through another gate. The investigator walked behind defendant as they proceeded down a hallway, which the investigator described as being "probably 50 feet in length, then it jockeys off to the right, and there is another hallway another 40 feet in length." They then entered a conference room and, upon doing so, the investigator immediately inquired of defendant as to why the canine alerted. Defendant responded, "I'm sorry, I'm sorry," and the investigator, in response, asked "[W]hy are you sorry?" Defendant then disclosed that she had "some stuff," reached into the front of her pants and revealed small balloons with the contraband inside of them. The investigator testified that he then read defendant her Miranda rights, and defendant confirmed that she understood them. The investigator took a statement from defendant, which he subsequently reduced to writing. As part of the written statement, defendant advised him that she came to the correctional facility to give drugs to an incarcerated individual.
In a correctional facility, when an incarcerated individual is questioned, Miranda warnings are unnecessary unless "the circumstances of the detention and interrogation of [the incarcerated individual] are no longer analogous to those kinds of detentions found not custodial in nonprison settings, but instead entail added constraint that would lead [an incarcerated individual] reasonably to believe that there has been a restriction on that person's freedom over and above that of ordinary confinement in a correctional facility" (People v Alls, 83 NY2d 94, 100 [1993], cert denied 511 US 1090 [1994]). Of course, defendant was a visitor to the correctional facility, and not an incarcerated individual. Although it does not appear that defendant would be subject to the "added constraint" requirement (id.), the Court of Appeals has nonetheless recognized that, in certain situations, Miranda warnings must be administered [*3]in a correctional facility.
That said, the need for Miranda warnings is not triggered unless an individual is subject to a custodial interrogation (see People v Paulman, 5 NY3d 122, 129 [2005]). In assessing whether an individual is in custody when an incriminating statement is made, a court examines "whether a reasonable person, innocent of any crime, would have felt free to leave" (People v Harris, 48 NY2d 208, 215 [1979] [citation omitted]; see People v Hardy, 223 AD2d 839, 840 [3d Dept 1996]). The People maintain the burden of establishing beyond a reasonable doubt that a defendant's statements were voluntarily made (see People v Baggett, 57 AD3d 1093, 1094 [3d Dept 2008]).
Against that backdrop, the initial oral statements that preceded the administration of Miranda warnings should have been suppressed. The record discloses that defendant went through multiple layers of security within the correctional facility, that she had to go through secure gates to enter the administrative wing, that the length of the hallway to reach the conference room was approximately 90 feet from where she was asked to accompany the investigator and that the investigator walked behind defendant through that hallway. Although the investigator testified that defendant was free to leave, the circumstances leading to defendant's removal from the security line and how she reached the conference room in the administrative wing do not support this conclusion. Indeed, when the canine alerted, the metal door that defendant had just passed through was closed and could only be opened by a security officer. In view of this particular setting, a reasonable person innocent of wrongdoing would not have felt that he or she was free to leave.
Furthermore, taking into account that the investigator took defendant aside because a canine had just alerted, as well as the purpose of having a canine at a security checkpoint, the investigator's inquiry of defendant as to why she thought the canine alerted was not merely investigatory or a request for pedigree information. Rather, it was accusatory and designed to elicit an incriminating response. Under these particular circumstances, defendant made the initial oral statements in a custodial setting, thereby requiring Miranda warnings. In the absence of such warnings, the initial oral statements should have been suppressed (see People v Abdullah, 206 AD3d 1340, 1346 [3d Dept 2022], lv denied 39 NY3d 939 [2022]; People v Baggett, 57 AD3d at 1095).
As to the written statement, it was given after Miranda warnings were issued. To that end, "where an improper, unwarned statement gives rise to a subsequent Mirandized statement as part of a 'single continuous chain of events,' there is inadequate assurance that the Miranda warnings were effective in protecting a defendant's rights, and the warned statement must also be suppressed" (People v Paulman, 5 NY3d at 130, quoting People v Chapple, 38 NY2d 112, 114 [1975]). The record reveals that defendant [*4]was interviewed by the same person and in the same room, that she gave her written statement almost immediately after the investigator's initial inquiry as to why she thought the canine alerted and that the whole process took less than 30 minutes without any breaks. Accordingly, the written statement should have been suppressed as being tainted by the improper questioning by the investigator (see People v Baggett, 57 AD3d at 1095; People v Durrin, 32 AD3d 665, 667-668 [3d Dept 2006]). In view of our determination herein, defendant's remaining contentions are academic.
Clark, J.P., Reynolds Fitzgerald, Fisher and McShan, JJ., concur.
ORDERED that the judgment is reversed, on the law, motion to suppress granted to the extent of suppressing defendant's oral and written statements, plea vacated and matter remitted to the County Court of Washington County for further proceedings not inconsistent with this Court's decision.

Footnotes

Footnote 1: Even though defendant's omnibus motion was also denied to the extent that it sought to suppress the physical evidence, defendant's argument on appeal is limited to the oral and written statements.