People v Henry (2025 NY Slip Op 01978)

People v Henry

2025 NY Slip Op 01978

Decided on April 3, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:April 3, 2025

CR-22-1957
[*1]The People of the State of New York, Respondent,
v
Garaus Henry, Appellant.

Calendar Date:February 11, 2025

Before:Garry, P.J., Aarons, Reynolds Fitzgerald, McShan and Mackey, JJ.

Veronica Reed, Schenectady, for appellant.
Matthew Van Houten, District Attorney, Ithaca (Andrew J. Bonavia of counsel), for respondent.

Reynolds Fitzgerald, J.
Appeal from a judgment of the County Court of Tompkins County (John Rowley, J.), rendered July 1, 2022, convicting defendant upon his plea of guilty of the crimes of manslaughter in the second degree and criminal possession of a weapon in the second degree.
Defendant was charged by a nine-count indictment stemming from allegations that defendant engaged in a gunfight and an ensuing car chase involving his vehicle and another vehicle reaching speeds in excess of 100 miles per hour while exchanging additional gunfire. Both vehicles crashed, resulting in various serious injuries to those involved, including the death of a passenger in the other vehicle. After defendant rejected the People's initial plea offer, a Huntley hearing was held and County Court ultimately denied defendant's motion to suppress statements that he made to law enforcement. On the first day of trial, defendant accepted an offer to plead guilty to manslaughter in the second degree and criminal possession of a weapon in the second degree, with the understanding that he would be sentenced to an aggregate concurrent prison term of five to 15 years in prison, to be followed by 2½ years of postrelease supervision. County Court subsequently sentenced defendant as negotiated. Defendant appeals.
Initially, defendant contends that the indictment charging him with criminal possession of a weapon in the second degree is jurisdictionally defective, a claim which may not be waived by a guilty plea and can be raised for the first time on appeal (see People v Cox, 221 AD3d 1057, 1058 [3d Dept 2023]; People v Mathis, 185 AD3d 1094, 1096 [3d Dept 2020]). "An indictment is rendered jurisdictionally defective only if it does not charge the defendant with the commission of a particular crime, by, for example, failing to allege every material element of the crime charged, or alleging acts that do not equal a crime at all" (People v Brabant, 229 AD3d 892, 896 [3d Dept 2024] [internal quotation marks and citations omitted]; accord People v Salmon, 179 AD3d 1404, 1405 [3d Dept 2020]). Defendant first argues that the indictment is defective because it merely alleges that defendant possessed a firearm outside of his home or business and does not distinguish between his initial possession of the firearm in his driveway, which he argues is a private sphere falling outside of the statute, and his possession on public roadways. "Defendant's challenge here, although cloaked as a jurisdictional defect, is in fact addressed to the evidentiary sufficiency of the indictment and, thus, was forfeited by his guilty plea" (People v Cook, 150 AD3d 1543, 1544 [3d Dept 2017] [internal quotation marks and citations omitted]; see People v Kelly, 221 AD3d 1265, 1266 [3d Dept 2023]; People v Salmon, 179 AD3d at 1405). Conversely, defendant's second assertion — that the indictment is defective for its failure to allege that defendant did not have a license to possess a firearm — is directed to a necessary element of the crime [*2]charged and, as such, is jurisdictional. However, such assertion is nonetheless unpersuasive. "Where, as here, [count 8 of the] . . . indictment . . . incorporates by reference the statutory provision applicable to the crime intended to be charged, this is sufficient to apprise a defendant of the charge and, therefore, renders the count jurisdictionally valid" (People v Cox, 221 AD3d at 1059 [internal quotation marks, ellipsis and citations omitted]; see People v Wheeler, 216 AD3d 1314, 1316 [3d Dept 2023], lv denied 40 NY3d 1082 [2023]; People v Mathis, 185 AD3d at 1096; People v Dubois, 150 AD3d 1562, 1564 [3d Dept 2017]).
As to defendant's constitutional challenge to the good moral character requirement of Penal Law § 400.00 (1) (b), this argument is unpreserved given his failure to raise the argument before County Court (see People v Pena, 28 NY3d 727, 730 [2017]; People v Steward, 220 AD3d 982, 984 [3d Dept 2023], lv denied 40 NY3d 1082 [2023]).
Defendant next argues that County Court erred in denying his motion to suppress the statements made to law enforcement, asserting that his statements were involuntary and that he twice unequivocally invoked his right to an attorney during the interview. We disagree. "The People bear the burden of proving, beyond a reasonable doubt, that a defendant's statements are voluntary. Although the inference of voluntariness is more easily drawn where, as here, Miranda warnings have been timely given, the People must still show that the defendant's statements were not products of coercion, either physical or psychological" (People v McCarty, 221 AD3d 1360, 1364 [3d Dept 2023] [internal quotation marks and citations omitted], lv denied 40 NY3d 1093 [2024]; see People v Lilliard, 206 AD3d 1241, 1242 [3d Dept 2022]). "Determining whether a statement is voluntary is a factual issue governed by the totality of the circumstances and the credibility assessments of the suppression court in making that determination are entitled to deference" (People v Weber, 226 AD3d 1158, 1160 [3d Dept 2024] [internal quotation marks and citations omitted], lv denied 42 NY3d 931 [2024]; see People v High, 200 AD3d 1209, 1210 [3d Dept 2021], lv denied 37 NY3d 1161 [2022]).
Turning to defendant's assertion that his statements were involuntary, the basis for this argument is his physical condition due to the vehicle crash and treatment at a hospital prior to the interview. The proof adduced at the suppression hearing consisted of the testimony of a Tompkins County Sheriff's investigator and an audiovisual recording of the interview. The investigator testified that he issued Miranda warnings at the beginning of the interview and defendant acknowledged that he understood his rights and voluntarily waived them prior to making any statements. Although defendant did make various statements during the interview indicating that he was tired and in pain, the investigator testified that defendant was given Tylenol and did not appear to be in physical [*3]discomfort. While review of the record reveals that at the time of the interview defendant appears tired and complains of discomfort, we note that he had been medically discharged from the hospital, was not in need of any immediate medical attention, did not seek to stop the questioning, appeared alert and provided cognizant answers to the investigator's questions. As such, we find defendant's motion to suppress his statements as involuntary was properly denied (see People v Weber, 226 AD3d at 1160; People v McCarty, 221 AD3d at 1366; People v Leppanen, 218 AD3d 995, 1002 [3d Dept 2023], lv denied 40 NY3d 1081 [2023]).
Defendant also contends that his statements should have been suppressed because he invoked his right to counsel on two occasions. "The right to counsel indelibly attaches as soon as a defendant in custody unequivocally requests the assistance of counsel. Whether a particular request is or is not unequivocal is a mixed question of law and fact that must be determined with reference to the circumstances surrounding the request, including the defendant's demeanor, manner of expression and the particular words found to have been used by the defendant" (People v Lipka, 231 AD3d 1283, 1283-1284 [3d Dept 2024] [internal quotation marks and citations omitted]; see People v Dawson, 38 NY3d 1055, 1055-1056 [2022]).
Defendant's first purported request for counsel occurred approximately 45 minutes into the interview, after the interviewing investigator had left the room and a different officer came into the room. Defendant said to him, "do I need to have my lawyer come up here?" This statement by defendant can reasonably be viewed as a hypothetical request for counsel. Accordingly, it did not mandate suppression "as the mere suggestion that one might consult a lawyer or [an] expression of uncertainty as to whether an attorney is needed does not constitute an unequivocal invocation" (People v Lipka, 231 AD3d at 1284; see People v Dawson, 38 NY3d at 1055; People v Montgomery, 221 AD3d 1347, 1348 [3d Dept 2023], lv denied 41 NY3d 966 [2024]). Defendant next argues that he invoked counsel approximately 10 minutes later when he asked, "can I get my attorney up here." Determination of whether this qualifies as an unequivocal invocation is unnecessary as, immediately after defendant made this inquiry, the investigator asked the name of his attorney and ceased questioning defendant. As such, suppression of defendant's statements was properly denied (see People v Lipka, 231 AD3d at 1284; People v Montgomery, 221 AD3d at 1348; People v Bowman, 194 AD3d 1123, 1129 [3d Dept 2021], lv denied 37 NY3d 963 [2021]).
Finally, although we are cognizant that this is defendant's first criminal conviction, upon reviewing the record as a whole, we decline defendant's request to reduce the sentence in the interest of justice because we are unpersuaded that the negotiated concurrent sentence imposed was unduly harsh or severe (see CPL 470.15 [6] [b]; People v Wimberly[*4], 228 AD3d 1177, 1179 [3d Dept 2024], lv denied 42 NY3d 1022 [2024]; People v Jackson, 217 AD3d 1271, 1272-1273 [3d Dept 2023], lv denied 40 NY3d 951 [2023]).
Garry, P.J., Aarons, McShan and Mackey, JJ., concur.
ORDERED that the judgment is affirmed.